Larry J. STEPHENS, Plaintiff,

v.

The STATE UNIVERSITY OF NEW YORK AT BUFFALO, Defendant.

No. 95–CV–939A.

United States District Court, W.D. New York.

April 21, 1998.

LeRoi C. Johnson, Buffalo, NY, for Plaintiff.

Mary C. Baumgarten, Asst. Atty. Gen., Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on March 18, 1996. On March 19, 1998, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendant's motion for summary judgment be granted.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for

summary judgment is granted and the case is dismissed.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

March 19, 1998.

This matter was referred to the undersigned by Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that defendant's motion be granted.

### BACKGROUND

The undisputed facts are as follows. On October 14, 1971, plaintiff was appointed to a full-time permanent position as a laborer at the State University of New York at Buffalo ("SUNY Buffalo"). He was promoted several times, and eventually attained the position of Electrician, grade SG–12, a Civil Service position, which he held until his discharge on July 6, 1993 (see Item 12, Fletcher Aff.).

Throughout the course of his employment at SUNY Buffalo, plaintiff received generally positive job-performance evaluations (see id., Ex. B). However, he also received no less than ten Notices of Discipline, and was counseled no less than 14 times, for tardiness and attendance problems (id., Exs. C, D). During a 4½–year period between May, 1988 and November, 1992, plaintiff received eight Notices of Discipline involving 66 instances of tardiness and totaling nearly 18 hours of work time (id.).

The final Notice of Discipline was issued to plaintiff on November 4, 1992. The matter proceeded to arbitration under the collective bargaining agreement between New York State and the Civil Service Employees Association ("CSEA"), of which plaintiff was a member. On January 6, 1993, a negotiated settlement was reached in lieu of formal determination by an arbitrator. The settlement agreement was signed by plaintiff and Mark Jurenovich, his CSEA representative, and by SUNY Personnel Associate Barbara Christy (Item 12, Ex. F). According to the terms of the settlement, plaintiff agreed to serve a disciplinary probation period of 26 weeks during which he was required "to perform his duties satisfactorily, and ... comply with University and [New York State] Time and Attendance Regulations," under penalty of termination from service (id.; see also Ex. E).

Between January 8 and June 23, 1993, plaintiff took approximately 16 days off and was late for work on three occasions (Item 12, Ex. G). Most of the time was charged to sick leave, and was supported by documentation. However, at least 1½–days were considered to be "unauthorized absence" (id.). As a result, on June 28, 1993, plaintiff was notified that he had not satisfactorily completed the probationary period, and that his employment would be terminated as of the close of business on July 6, 1993 (id.).

On November 14, 1994, plaintiff filed an "Amended Complaint" with the New York State Division of Human Rights ("NYSDHR") in which he claimed that his July 6, 1993 termination was in retaliation for having previously filed discrimination charges against SUNY Buffalo (Item 12, Ex. H). In the previous charges, dated March 18, 1992, and February 16, 1993, plaintiff claimed that he was denied training opportunities that were given to similarly situated white employees, and that he was disciplined more harshly than white employees with similar or worse attendance records (id.).

On March 14, 1995, the NYSDHR issued a "Determination and Order Investigation," stating as follows:

Investigation did not reveal sufficient evidence to support a belief that the complainant was denied equal terms, conditions, and privileges of employment because of his race or color. Investigation revealed that complainant was terminated because of attendance problems, which he had been warned about previously. The evidence indicates that a white employee was disciplined, placed on probation, and terminated around the same time as complainant, for similar

reasons. The record shows respondent employed, and continued to employ, another black electrician. The evidence does not indicate complainant was denied training because of his race or color. The evidence does not support a belief that complainant was treated differently or terminated, because of his color.

(Item 12, Ex. I).

On October 30, 1995, plaintiff filed a complaint in this court seeking back pay, compensatory and punitive damages, and attorney's fees under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the Equal Pay Act of 1963 (29 U.S.C. § 206(d)), 42 U.S.C. §§ 1981 and 1981a, New York Executive Law § 296, and New York Labor Law § 194.[1] Plaintiff alleges that he was denied training opportunities and equal pay, and that he was disciplined and eventually terminated from his job, because of his race and in retaliation for his complaints about discriminatory treatment. He also claims that defendant made fraudulent representations about job security (Item 1).

Defendant now moves for summary judgment on the following grounds:

1. Plaintiff has failed to demonstrate a *prima facie* case of discriminatory termination;

2. Plaintiff has failed to demonstrate a *prima facie* case of discrimination concerning training;

3. Plaintiff has failed to demonstrate a *prima facie* case of retaliation; and,

4. Plaintiff's remaining claims are barred by the Eleventh Amendment, and otherwise fail to state valid claims for relief.

Each of these grounds is discussed in turn below.

1. Plaintiff named as defendants the State of New York, SUNY Buffalo, the New York State Department of Civil Service and the New York State Department of Audit and Control (Item 1). On May 23, 1996, the parties filed a joint stipulation of discontinuance of the action against the State and the Departments of Audit and Control and Civil Service, leaving SUNY Buffalo as the sole remaining defendant (Item 4). On May 15, 1997, plaintiff filed a motion pursuant to Fed.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. 2505; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material·fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001

R.Civ.P. 19 to add three individual SUNY Buffalo employees as necessary parties (Item 15). On May 20, 1997, this court issued an order (Item 19) denying plaintiff's motion without prejudice to refile pending the determination of defendant's summary judgment motion. Then, on May 30, 1997, plaintiff filed another motion to add necessary parties (Item 20). That motion is denied for the same reasons as set forth in the court's May 20, 1997 order.

(2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra,* 933 F.2d at 167. Stated slightly differently, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

Though caution must be exercised in granting summary judgment where motive is genuinely in issue, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact. *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997); *see also Gallo, supra; Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 19 (2d Cir.1995); *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994). As explained by the Second Circuit in *Gallo:*

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo, supra.* In this case, the substantive law is Title VII.

## II.  Title VII/Discriminatory Discharge.

■ Title VII of the Civil Rights Act of 1964 provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, be-

cause of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). In a Title VII case,[2] the burden a plaintiff bears in proving discriminatory discharge follows the three step burden-shifting analysis of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as further developed in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under that test, the plaintiff first must establish a *prima facie* case of racial discrimination. Should the plaintiff meet this *prima facie* burden, the burden then shifts to the defendant to provide a legitimate nondiscriminatory reason or motive for the termination. Finally, the burden shifts back to the employee to show that the defendant's stated reasons or motives are merely a pretext for discrimination. The plaintiff always bears the ultimate burden of proof. *Hicks, supra* at 510–511, 113 S.Ct. 2742. In order to prevail, the plaintiff must ultimately show that discrimination played a motivating role in, or contributed to, the employer's decision. *Id.* at 514–15, 113 S.Ct. 2742; *see also Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 221 (2d Cir. 1997); *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 203 (2d Cir.1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.").

■ In this case, defendant contends that plaintiff has failed to demonstrate *prima facie* discriminatory discharge. In order to

---

2.  The same analysis applies for plaintiff's claims under the New York Human Rights Law. *See*

*Gallo, supra,* 22 F.3d at 1225.

establish a *prima facie* case of discriminatory discharge, the plaintiff must show that (1) he belongs to a protected class, (2) he was performing his duties satisfactorily, (3) he was discharged, and (4) his discharge occurred under circumstances giving rise to an inference of discrimination. *See McLee v. Chrysler Corp., supra,* 109 F.3d at 134; *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994). The burden that a plaintiff must meet at the *prima facie* stage is *de minimis. Cronin v. Aetna Life Insurance Co., supra,* 46 F.3d at 203–04; *Chambers, supra; Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

■ There is no question that plaintiff meets the first and third *prima facie* requirements. As to the second requirement—satisfactory job performance—several courts have held that excessive tardiness, or sporadic and unpredictable attendance, is sufficient to render an employee's job performance unsatisfactory. *See, e.g., Cowan v. Glenbrook Security Services, Inc.,* 123 F.3d 438, 445 (7th Cir.1997); *Tyndall v. National Educ. Centers,* 31 F.3d 209, 213 (4th Cir.1994); *Timms v. Frank,* 953 F.2d 281, 287 (7th Cir.), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992); *Dugan v. Martin Marietta Aerospace,* 760 F.2d 397, 400 (2d Cir. 1985); *Strathie v. Department of Transportation,* 716 F.2d 227 (3d Cir.1983); *Ramsey v. Toyota Motor Sales, U.S.A., Inc.,* 1995 WL 871835, at *7 (D.Md. November 7, 1995), *aff'd,* 92 F.3d 1181 (4th Cir.1996); *Santiago v. Temple University,* 739 F.Supp. 974 (E.D.Pa.1990), *aff'd,* 928 F.2d 396 (3d Cir. 1991); *Wimbley v. Bolger,* 642 F.Supp. 481 (W.D.Tenn.1986), *aff'd,* 831 F.2d 298 (6th Cir. 1987); *Hendricks v. National Cleaning Contractors, Inc.,* 1998 WL 26188 (S.D.N.Y.1998); *Gomez v. Pellicone,* 986 F.Supp. 220, 227 (S.D.N.Y.1997); *Miller v. Vesta, Inc.,* 946 F.Supp. 697, 714 (E.D.Wis.1996); *Aguilar v. Aircraft Gear Corporation,* 1996 WL 599449, at *6 (N.D.Ill.1996); *Gore v. GTE South, Inc.,* 917 F.Supp. 1564, 1572–73 (M.D.Ala. 1996).

■ The Second Circuit instructs that whether a plaintiff's job performance was satisfactory "depends on the employer's cri-teria for the performance of the job." *Thornley v. Penton Publishing,* 104 F.3d 26, 29 (2d Cir.1997). In the absence of any showing that these criteria were demanded in bad faith, the trial judge should not assess their reasonableness or relationship to the performance of the job. *Id.; see also Hendricks v. National Cleaning Contractors, Inc., supra,* 1998 WL 26188, at *3.

Here, SUNY Buffalo's policy for tardiness of facilities personnel is set forth in SUNY's "Facilities Management" manual as follows:

> Facilities Management believes it is essential that all employees be punctual and ready for work on time every scheduled workday. When employees do not report for work on time, either at the start of their shift or upon return from breaks or lunch, an additional burden is placed upon co-workers, morale is affected, work cannot be completed on schedule and costs increase, all of which reflect poorly on our organization.

> Punctuality, as well as overall attendance record, is a factor in performance evaluations and when considering an employee for promotions or lateral job opportunities.

(Item 12, Ex. L). The criteria provide for progressive penalties for tardiness, beginning with charges to accruals of overtime, compensatory, vacation or personal leave, and progressing through counseling and disciplinary procedures. There is nothing in the record to indicate that these policies and procedures have been enacted or applied in bad faith.

In addition, the record clearly establishes that plaintiff had a chronic tardiness and attendance problem. He was counseled on numerous occasions, and disciplined on numerous others. He was finally placed on disciplinary probation, and was discharged when he failed "to perform his duties satisfactorily ..." (Item 12, Ex. F). Based on this record, no rational trier of fact could find that plaintiff meets the second prong of the *prima facie* discrimination inquiry.

■ As to the fourth prong—circumstances giving rise to an inference of discrimination—the Second Circuit has described

the appropriate summary judgment inquiry as follows:

> Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination with respect to the circumstances that give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.

*McLee v. Chrysler Corp., supra,* 109 F.3d at 135; *see also Cronin v. Aetna Life Insurance Co., supra,* 46 F.3d at 204; *Chambers v. TRM Copy Centers Corp., supra,* 43 F.3d at 38. The inference of discriminatory motive may be drawn from evidence tending to show that other employees, outside the protected class, had similar work and attendance records but were not terminated. *See Rush v. McDonald's Corp.,* 966 F.2d 1104, 1112 (7th Cir.1992); *Miller v. Vesta, Inc., supra,* 946 F.Supp. at 715.

There is no evidence in the record tending to show that plaintiff was disciplined more harshly for his tardiness and attendance problems than white employees. On the other hand, defendant has submitted documentation showing that a white employee was discharged for excessive tardiness at approximately the same time and under similar circumstances as plaintiff (*see* Item 12, Ex. J). Both employees received Notices of Discipline on November 4, 1992. Indeed, the white employee's Notice of Discipline was based on only 4 instances of tardiness, totaling 1 hour 26 minutes of lost work time, whereas plaintiff's Notice of Discipline was based on at least 8 instances of tardiness totaling over 4 hours of lost work time. Both matters went to arbitration, and resulted in settlement. Both employees agreed to a disciplinary probation of 26 weeks. Both employees were discharged when they failed to meet the terms of the probation agreement.

Based on this record, I find that the proffered admissible evidence shows no circumstances which would be sufficient to permit a rational finder of fact to infer a discriminatory motive underlying defendant's reasons for discharging plaintiff. Accordingly, since no reasonable jury could find in favor of plaintiff on his *prima facie* case of discriminatory termination, there is no genuine issue of material fact remaining for trial and a grant of summary judgment in favor of defendant is proper.

For these reasons, defendant's motion should be granted and summary judgment should be entered in favor of defendant on the claim of discriminatory termination.

### III. Training.

█ The standards for assessing a *prima facie* case of individualized disparate treatment with respect to training opportunities are essentially the same as the standards, set forth above, for assessing a *prima facie* case of discriminatory discharge. Plaintiff must show (1) that he is a member of a protected class, (2) that he satisfactorily performed the duties required in his position, (3) that SUNY Buffalo had a policy of providing on-the-job training to its facilities employees, and (4) that plaintiff was not provided this training under circumstances giving rise to an inference of discrimination. *See Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991).

█ Beyond plaintiff's failure to establish the "satisfactory job performance" prong in this case, as demonstrated by the discussion above, the record before the court shows that plaintiff was provided the same training opportunities as similarly-situated white employees. For example, documentation submitted by defendant shows that during the period from June, 1991 through March, 1992, there were five electricians working at the South Campus Electrical Shop (Item 12, Ex. K). Plaintiff was the only black employee. Plaintiff received the same training during that period as one of the other employees, and more training than another employee. Two of the electricians received more training than plaintiff, attributable to their attendance at a lighting seminar on October 1, 1991.

Based on this evidence, no rational jury could find that plaintiff was denied training opportunities under circumstances giving rise

to an inference of discrimination. Accordingly, summary judgment in favor of defendant is appropriate on plaintiff's disparate impact/denial of training claim.

## IV. Retaliation.

█ Retaliatory discharge in violation of Title VII occurs when "a retaliatory motive plays a part in [the discharge], ... whether or not it was the sole cause ... [or] when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). The allocation of burdens of proof in retaliation cases follows the general rules enunciated by the Supreme Court in *McDonnell Douglas* and *Hicks.* See *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177–78 (2d Cir.1996); *Sumner v. United States Postal Serv.,* 899 F.2d 203, 208 (2d Cir.1990).

█ To establish a *prima facie* case of retaliation, an employee must show that (1) he or she was engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Reed, supra* at 1178; *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). A causal connection can be demonstrated indirectly by showing that the protected activity was followed closely in time by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant. *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Davis v. State University of New York,* 802 F.2d 638, 642 (2d Cir.1986); *Simmons v. Camden County Board of Education,* 757 F.2d 1187, 1188–89 (11th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985).

█ In this case, as discussed above, there is no showing that white employees with similar attendance problems were treated differently that plaintiff. Nor is there any direct evidence of retaliatory or discriminatory animus. However, the November 4, 1992 Notice of Discipline was close enough in time to plaintiff's March 18, 1992 NYSDHR complaint, and the July 6, 1993 discharge was close enough in time to plaintiff's February 16, 1993 amendment of his NYSDHR charge, to allow a rational jury to infer an indirect causal connection between the protected activity and the alleged discriminatory act.

█ Once a plaintiff makes out a *prima facie* case that a discriminatory factor "play[ed] a motivating part in an employment decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the employer may meet its summary judgment burden if it proffers a non-discriminatory, non-pretextual reason for the discharge. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996). Then, to defeat the motion the plaintiff must produce "not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason for the discharge.'" *Id.* (quoting *Woroski v. Nashua Corp., supra,* 31 F.3d at 110). In this case, as already thoroughly discussed, no rational jury could conclude that defendant's proffered reasons for the discharge—plaintiff's chronic lateness and unexcused absences from work—were false.

Accordingly, I find that defendant is entitled to summary judgment on plaintiff's claims of discriminatory termination, training and retaliation under Title VII.

## V. Remaining Claims.

Defendant also seeks dismissal of plaintiff's claims under 42 U.S.C. §§ 1981 and 1981a and state law. Defendant contends that these claims are barred by the Eleventh Amendment to the United States Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State,

or by Citizens or Subjects of any Foreign State."

■ The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Eleventh Amendment provides, but also over suits against states brought by their own citizens. *See, e.g., Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Thus, in the absence of the state's explicit consent to be sued or Congress's unequivocal abrogation of immunity, the Eleventh Amendment bars a suit in federal court against a state or one of its agencies. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* at 100–01, 104 S.Ct. 900; *see also Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996) ("we have often made it clear that the relief sought by plaintiff suing a State is irrelevant to the question of whether is suit is barred by the Eleventh Amendment"). For purposes of Eleventh Amendment immunity, courts in this circuit have found SUNY to be an arm of the State of New York. *Dube v. State University of New York,* 900 F.2d 587, 594–95 (2d Cir.1990), *cert. denied sub nom Wharton v. Dube,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991) (SUNY is an integral part of the government of New York State, and when it is sued the state is the real party).

■ While Congress has overridden states' sovereign immunity respecting Title VII claims, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 452, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Gierlinger v. New York State Police,* 738 F.Supp. 96, 97 (W.D.N.Y.1990), it has not done so with respect to 42 U.S.C. §§ 1981 or 1981a. *Chinn v. City University of New York School of Law,* 963 F.Supp. 218, 224 n. 1 (E.D.N.Y.1997); *see also Davis v. Buffalo Psychiatric Center,* 623 F.Supp. 19, 20 (W.D.N.Y.1985); *Daisernia v. State of New York,* 582 F.Supp. 792, 800, 803 (N.D.N.Y. 1984). There is no suggestion in the record in this case that New York State has waived its immunity or has otherwise consented to a § 1981 suit in federal court.

In addition, § 1981a(b) expressly precludes recovery of punitive damages against a state government agency. 42 U.S.C. § 1981a(b); *see Ettinger v. State University of New York College of Optometry,* 1998 WL 91089, at *7 (S.D.N.Y.1998).

■ Finally, to the extent that plaintiff's state law claims are not coextensive with his claims under Title VII (*see note 2, infra*), the state law claims are likewise barred by the Eleventh Amendment. Absent express consent by the state, a state or common law claim against a state "or one of its agencies or departments" cannot be heard in federal court. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see also Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 968–69 (2d Cir. 1984); *Gierlinger v. New York State Police, supra,* 738 F.Supp. at 97.

Accordingly, summary judgment is appropriate dismissing plaintiff's claims under 42 U.S.C. §§ 1981 and 1981a, plaintiff's claims under New York Executive Law and New York Labor Law, and plaintiff's fraud claim.

### CONCLUSION

For the above reasons, it is recommended that the defendant's motion for summary judgment (**Item 9**) be granted, and the case be dismissed.

For the reasons set forth in this court's May 20, 1997 order (Item 19), plaintiff's motion to add necessary parties (**Item 20**) is denied without prejudice (*see note 1, infra*).