162 F.3d 770
 78 Fair Empl.Prac.Cas. (BNA) 1316,
74 Empl. Prac. Dec. P 45,717
Ralph A. COOPER, Plaintiff-Appellee,
v.
NEW YORK STATE OFFICE OF MENTAL HEALTH, Bryan F. Rudes and
Richard A. Lallier, Defendants-Appellants.
John L. METE and Merrill J. Gottlieb, individually and on
behalf of all other persons similarly situated,
Plaintiffs-Appellees,
v.
NEW YORK STATE OFFICE OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES and New York State
Department of Civil Service,
Defendants-Appellants.
Clifford DAVIS; Billie Levy, Executrix of the Estate of
Nathan Levy, Jr.; and Robert Bard, Plaintiffs-Appellees,
v.
BOARD OF TRUSTEES OF THE UNIVERSITY OF CONNECTICUT and The
University of Connecticut, Defendants-Appellants.
 Docket Nos. 97-9367, 97-9433 and 97-9543.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 16, 1998.
Decided Dec. 23, 1998.
 
 Lisa LeCours, Albany, NY, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, of Counsel), for Defendants-Appellants.
 Paul M. Shapiro, Storrs, CT, Assistant Attorney General for the State of Connecticut (Richard Blumenthal, Attorney General of the State of Connecticut, Gregory T. D'Auria and Bernard F. McGovern, Jr., Assistant Attorneys General, of Counsel and on the brief), for Defendants-Appellants.
 Pauline R. Kinsella, Albany, NY (Hinman, Straub, Pigors & Manning, P.C., Deirdre Roney, of Counsel, for Plaintiff-Appellee Ralph A. Cooper; Law Offices of Leonard N. Flamm, New York City, for Plaintiffs-Appellees John L. Mete, et al.), for Plaintiffs-Appellees.
 Geoffrey Judd Vitt, Norwich, VT (Brooks, McNally, Platto & Vitt, P.C., Eric D. Jones, of Counsel), for Plaintiffs-Appellees Clifford Davis, et al.
 Seth M. Galanter, Washington, DC, Department of Justice, Civil Rights Division (Bill Lann Lee, Acting Assistant Attorney General, Jessica Dunsay Silver, of Counsel), for United States as Intervenor.
 American Association of Retired Persons, Washington, DC (Cathy Ventrell-Monsees, Melvin Radowitz, of Counsel), for the American Association of Retired Persons, Amicus Curiae.
 Before: FEINBERG, KEARSE and STRAUB, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Defendants-appellants in two of these three appeals are agencies or officials of New York State and defendants-appellants in the third appeal are the University of Connecticut and its Board of Trustees. The appeals are from two orders of the United States District Court for the Northern District of New York, one by Frederick J. Scullin, Jr., J., and the other by Neal P. McCurn, J., and an order of the United States District Court for District of Connecticut, Alvin W. Thompson, J. All of the orders denied defendants' motions to dismiss the complaints of the various plaintiffs-appellees. These three appeals present a single legal issue: whether federal courts have subject matter jurisdiction over claims alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994), brought by individuals against state agencies or officials. In all three cases, the district courts found that plaintiffs' claims under the ADEA against the various defendants are not barred by the Eleventh Amendment. For reasons set forth below, we affirm.
 
 I. Background
 
 2
 In November 1993, plaintiff Ralph A. Cooper, a New York state employee, brought an action in the Northern District against the New York State Office of Mental Health (OMH) and Bryan F. Rudes and Richard Lallier, two OMH employees, alleging that OMH's decision to terminate his employment violated the ADEA.[1] In October 1991, plaintiffs John L. Mete and Merrill J. Gottlieb brought a class action in the Northern District against the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) and the New York State Department of Civil Service alleging, inter alia, that the complete elimination of the management position held by a defined class of employees, including plaintiffs, violated the ADEA. In May 1992, Clifford Davis, Nathan Levy, Jr. and Robert Bard, all faculty members of the University of Connecticut School of Law, brought an action in the United States District Court for the District of Connecticut against the Board of Trustees of the University of Connecticut and the University of Connecticut alleging that salary decisions made between 1984 and 1990 violated, inter alia, their rights under the ADEA.
 
 
 3
 In May 1997, defendant OMH moved to dismiss plaintiff Cooper's complaint pursuant to Fed.R.Civ.P. 12(b)(1),[2] arguing that the Eleventh Amendment deprived the court of subject matter jurisdiction over ADEA complaints filed against States and state agencies because state sovereign immunity was not abrogated by Congress when it extended the coverage of the ADEA to include state employees. In October 1997, Judge Scullin denied defendant OMH's motion.
 
 
 4
 In June 1994, defendant OMRDD moved pursuant to Rule 56 for summary judgment as to all federal causes of action alleged by plaintiffs Mete and Gottlieb. In December 1996, the district court sua sponte raised the issue of its jurisdiction over ADEA claims brought against New York State and its agencies. In November 1997, Judge McCurn denied OMRDD's motion as to the ADEA claims.[3]
 
 
 5
 In September 1996, the Connecticut defendants moved pursuant to Rule 12(b)(1) to dismiss the ADEA claims of plaintiffs Davis, Levy and Bard, arguing that the Eleventh Amendment deprived the district court of jurisdiction over those claims. In September 1997, Judge Thompson denied defendants' motion.
 
 
 6
 Each of these three orders was separately appealed in timely fashion. We have jurisdiction to review the challenged orders, despite their apparent lack of finality, because orders denying States' claims of Eleventh Amendment immunity fall under the collateral order doctrine, which allows immediate appellate review in certain circumstances of what would otherwise be non-final decisions. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). In January 1998, this Court ordered the appeals to be heard in tandem. For the reasons that follow, we hold that the Eleventh Amendment did not deprive the district courts of jurisdiction over these ADEA claims because Congress abrogated the States' sovereign immunity through a valid exercise of its power under § 5 of the Fourteenth Amendment.
 
 II. Discussion
 
 7
 A district court's legal conclusion is reviewed by this court de novo. See Close v. New York, 125 F.3d 31, 35 (2d Cir.1997) (Rule 12(b)(1) motion); Frank v. Aaronson, 120 F.3d 10, 14 (2d Cir.1997) (Rule 56 motion).
 
 
 8
 The Eleventh Amendment provides the States with a substantial grant of immunity from suit in federal court. The Amendment states:
 
 
 9
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 10
 In addition to barring suits in federal court against an unconsenting State by citizens of other States, the Amendment has been interpreted to bar suits in federal court against an unconsenting State by its own citizens. Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). However, Congress may abrogate the States' sovereign immunity if it (1) provides "a clear legislative statement" of its intent to abrogate, Seminole Tribe v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and (2) legislates pursuant to a valid exercise of its enforcement power under § 5 of the Fourteenth Amendment. Id. at 59, 116 S.Ct. 1114.
 
 
 11
 In 1974, as more fully set forth below, Congress extended coverage of the ADEA to include state employees. We join the majority of our sister circuits in concluding that Congress satisfied both prongs of the Seminole Tribe test in enacting the 1974 amendments to the ADEA. See Migneault v. Peck, 158 F.3d 1131 (10th Cir.1998); Coger v. Board of Regents, 154 F.3d 296 (6th Cir.1998); Scott v. University of Mississippi, 148 F.3d 493 (5th Cir.1998); Keeton v. University of Nevada Sys., 150 F.3d 1055 (9th Cir.1998); Goshtasby v. Board of Trustees, 141 F.3d 761 (7th Cir.1998). But see Humenansky v. Regents of the Univ. of Minnesota, 152 F.3d 822 (8th Cir.1998) (holding that the ADEA does not satisfy either prong of the test); Kimel v. Florida Bd. of Regents, 139 F.3d 1426 (11th Cir.1998) (finding that ADEA lacks unmistakable expression by Congress of intent to abrogate; not reaching whether it had power to abrogate). The Eleventh Amendment issue has generated numerous opinions in the other circuits. Under all the circumstances, we will note our agreement with the other circuits on various issues and respond at greater length to the arguments of appellants only where we think it appropriate to do so.[4]
 
 A. Intent to Abrogate
 
 12
 The appeals before us stem in part from the Supreme Court's decision in Employees of Dept. of Public Health and Welfare v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In Employees, the Court considered whether in enacting the Fair Labor Standards Act (FLSA) Congress had abrogated the States' immunity under the Eleventh Amendment. The Court focused on the language of the FLSA's enforcement section, 29 U.S.C. § 216(b), and concluded that the FLSA did not abrogate state sovereign immunity because Congress did not express such an intent by "clear language." Id. at 285, 93 S.Ct. 1614.[5] In response to Employees, in 1974 Congress amended § 216(b), changing "in any court of competent jurisdiction" to "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." FLSA Amendments of 1974, Pub.L. 93-259, § 6(d)(1), 88 Stat. 55, 61 (amending 29 U.S.C. § 216(b)).[6]
 
 
 13
 In the same legislative package that amended the FLSA in response to Employees, Congress also included amendments that expanded the scope of the ADEA. See id. § 28. When the ADEA was originally enacted in 1967, it applied only to private employers. See EEOC v. Elrod, 674 F.2d 601, 604 (7th Cir.1982). The 1974 amendments extended the scope of the ADEA by adding the States and their agencies to the definition of "employer," FLSA Amendments of 1974, § 28(a)(2), 88 Stat. at 74 (amending 29 U.S.C. § 630(b)(2)), and by adding "employees subject to the civil service laws of a State government" to the definition of "employee," id. § 28(a)(4) (amending § 630(f)). However, the 1974 amendments did not alter the ADEA enforcement section, 29 U.S.C. § 626(c).[7]
 
 
 14
 The language of unaltered § 626(c) forms the crux of appellants' argument that Congress, in enacting the 1974 ADEA amendments, did not express an unequivocal intent to abrogate the State's immunity from suit in federal court. Appellants point out that § 626(c), which authorizes aggrieved persons to bring their actions "in any court of competent jurisdiction," contains exactly the same enforcement language, see note 5 supra, that the Supreme Court in Employees held did not evidence a clear intent to abrogate state sovereign immunity. Employees, 411 U.S. at 284-86, 93 S.Ct. 1614. Appellants further argue that Congress's failure in 1974 to amend the ADEA enforcement provision to refer explicitly to the States, when it had the opportunity to do so and the knowledge (based on Employees ) that the then-current enforcement language was insufficient, is particularly significant. Appellants acknowledge that the addition of States to the definition of "employer" could be interpreted as an intent to abrogate the Eleventh Amendment, but stress that we still must find an "unmistakably clear" statement of intent, Dellmuth v. Muth, 491 U.S. 223, 228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989) for the States' immunity to be deemed abrogated. See also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Appellants contend that this threshold has not been met.
 
 
 15
 We disagree. In reaching this conclusion, we join the majority of the other circuits that have considered the question. See, e.g., Goshtasby, 141 F.3d at 766 (" 'Unless Congress had said in so many words that it was abrogating the states' sovereign immunity in age discrimination cases--and that degree of explicitness is not required ...--it could not have made its desire to override the states' sovereign immunity clearer.' ") (quoting Davidson v. Board of Governors, 920 F.2d 441, 443 (7th Cir.1990)); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 695 (3rd Cir.1996) ("The [ADEA] simply leaves no room to dispute whether states and state agencies are included among the class of potential defendants when sued under the ADEA for their actions as 'employers.' "); Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694, 701 (1st Cir.1983) ("[T]he ADEA's express authorization for the maintenance of suits against state employers comprises adequate evidence to demonstrate the congressional will that Eleventh Amendment immunity be abrogated.").
 
 
 16
 It is true, as appellants emphasize, that the ADEA's enforcement language is identical to that found insufficient to abrogate immunity under the FLSA in Employees. Nevertheless, we think that the ADEA is "unmistakably clear" in its intent to abrogate, thus distinguishing it from the statutes considered by the Court in Employees and its progeny. For example, the version of the FLSA under consideration in Employees defined "employers" to exclude "any State or political subdivision of a state" except for certain state-run hospitals and schools. 411 U.S. at 282-83, 93 S.Ct. 1614. Given congressional hesitancy to subject the States to the substantive provisions of the FLSA, the Court concluded that it could not be assumed that Congress intended to subject the States to the enforcement sections of the FLSA without explicit guidance in the text of the statute. Id. at 285, 93 S.Ct. 1614 ("It is not easy to infer that Congress ... desired silently to deprive the States of an immunity....").
 
 
 17
 The legislation under consideration in Atascadero and Dellmuth suffered from similar defects. In Atascadero, the only evidence of abrogation was the section of the Rehabilitation Act that provides remedies for violations of that Act "by any recipient of Federal assistance." 29 U.S.C. § 794(a). Since the States are recipients of federal funding under the statute, they technically fall within the group authorized to be sued under that section. However, the statute nowhere specifically identifies the States as the type of "recipient" intended to be subject to suit. In light of the paucity of statutory evidence of intent, the Court explained that "[a] general authorization for suit in federal court is not ... sufficient to abrogate the Eleventh Amendment." Atascadero, 473 U.S. at 246, 105 S.Ct. 3142.
 
 
 18
 In Dellmuth, the Court concluded that the Education of the Handicapped Act (EHA) did not contain sufficiently explicit language to overcome the presumption against abrogation of immunity. However, the principal textual argument in that case for abrogation was based only upon a "general authorization" for judicial review of administrative decisions in § 1415(e)(2) of the EHA and upon what the Court characterized as "frequent" references to the States in the statute. 491 U.S. at 231-32, 109 S.Ct. 2397. Without an explicit creation of a private right of action for damages, the Court concluded that it could not be said with sufficient certainty that Congress had intended to allow private damage actions against the States in abrogation of their sovereign immunity. Id.
 
 
 19
 The amended ADEA is quite different from the statutes involved in those cases. Unlike the situation in Employees, the ADEA does not explicitly exclude most state employees from coverage. Instead, the ADEA explicitly includes the States and their employees within its scope by naming the States--without any limitation--in the definition of "employer," 29 U.S.C. § 630(b), and naming state employees within the definition of "employee," id. § 630(f). Nor, as in the statute at issue in Atascadero, are the States subject to liability only by implication. Instead, because the States are explicitly named as an "employer," they fall within the core group of potential defendants in ADEA actions. Finally, unlike the situation in Dellmuth, the judicial review provisions of the statute are not limited to appellate review of state administrative decisions. Instead, the ADEA has a private enforcement section that allows aggrieved persons to sue for damages, such as back pay. See 29 U.S.C. § 626(c). While it is true that § 626(c) is phrased in general terms--"any person aggrieved" may sue in "any court of competent jurisdiction"--the combination of the amendments to "employer" and "employee" and the availability of private damage actions makes it clear that States are intended to be subject to liability under § 626(c). The fact that the States are not named again in the enforcement section does not make ambiguous otherwise clear statements of intent to abrogate. Indeed, § 626(c) does not use the term "employer" at all; by this omission, should we conclude that Congress did not state clearly its intent to subject any employer, public or private, to the enforcement provision of the Act? Surely such a conclusion would be an absurdity.[8]
 
 
 20
 Nothing in the ADEA or the cases cited by appellants suggests that § 626(c) is to be read in a vacuum, requiring a restatement of congressional intent to apply the ADEA to the States. See Seminole, 517 U.S. at 56-57, 116 S.Ct. 1114 (looking to references to the States in numerous sections of the statute in finding clear statement of intent to abrogate). The language of the FLSA enforcement provision was found insufficient to abrogate in light of the statute as a whole; the hesitancy of Congress to subject the States to the FLSA led to doubt as to whether Congress intended to subject the States to the enforcement powers of the federal courts. The ADEA as a whole, however, offers no evidence of hesitancy on the part of Congress.[9] In light of the explicit statements that States fall within the Act's purview, Congress was "unmistakably clear" in expressing its intent to abrogate state sovereign immunity. Cf. Dellmuth, 491 U.S. at 233, 109 S.Ct. 2397 (Scalia, J., concurring) (pointing out that by clearly subjecting States to suit for monetary damages, Congress could abrogate sovereign immunity "without explicit[ly] refer[ing] to state sovereign immunity or the Eleventh Amendment,").
 
 
 21
 Finally, we note that we are equally unpersuaded by appellants' argument that the cross-reference between the FLSA enforcement provisions and the ADEA enforcement provisions creates ambiguity as to Congress's intent to abrogate state sovereign immunity. See 29 U.S.C. § 626(b) (cross-referencing § 216).[10] We have already found that Congress provided a "clear legislative statement," Seminole, 517 U.S. at 55, 116 S.Ct. 1114, of its intent to abrogate. The cross-reference to the FLSA enforcement provision that states that an action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 216(b) further supports that finding. See generally, Scott, 148 F.3d at 500. We believe that this cross-reference to § 216(b) makes clear Congress's intent to subject the States to suit in federal court. See, e.g., id. at 500 & n. 7; Hurd v. Pittsburg State University, 109 F.3d 1540, 1544 n. 3 (10th Cir.1997) ("[T]he enforcement provisions which the ADEA now references specifically authorize ADEA suits in federal court.").
 
 B. Section 5 Authority
 
 22
 Appellants also argue that even if Congress intended to abrogate state sovereign immunity, it did not have the power to do so because the ADEA was not enacted pursuant to § 5 of the Fourteenth Amendment. Alternatively, appellants contend that even if Congress enacted the ADEA pursuant to § 5, Congress exceeded its § 5 authority as defined by the Supreme Court in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).
 
 
 23
 Although this circuit has never ruled directly on this issue, in dictum we have listed the ADEA as an example of a statute enacted pursuant to § 5 of the Fourteenth Amendment. Santiago v. New York State Dep't of Correctional Servs., 945 F.2d 25, 31 (2d Cir.1991). We agree with the overwhelming weight of authority holding that the ADEA was adopted pursuant to § 5 of the Fourteenth Amendment. See, e.g., Coger, 154 F.3d at 304-05 (6th Cir.); Scott, 148 F.3d at 500-03 (5th Cir.); Keeton, 150 F.3d at 1057-58 (9th Cir.); Goshtasby, 141 F.3d at 768 (7th Cir.); Hurd, 109 F.3d at 1544-46 (10th Cir.); Blanciak, 77 F.3d at 695 (3rd Cir.); Ramirez, 715 F.2d at 700 (1st Cir.).
 
 
 24
 Appellants make a number of arguments that require only brief response. They point out that the ADEA does not contain any reference to § 5 of the Fourteenth Amendment in the body of the statute or in the legislative history of the original act or the 1974 amendments. However, the failure of Congress to use the words "section 5" or "Fourteenth Amendment" or "equal protection" is not controlling. EEOC v. Wyoming, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). As long as Congress could have enacted the ADEA pursuant to § 5, Congress need not have declared its source of power. Fullilove v. Klutznick, 448 U.S. 448, 476-78, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); EEOC v. Elrod, 674 F.2d 601, 608-09 (7th Cir.1982).
 
 
 25
 Appellants also argue that even if Congress intended to act pursuant to § 5 in enacting the 1974 amendments, it lacked the power to do so because the statute involves neither a fundamental right nor a suspect classification. We agree with those courts that have held that Congress has the power to prohibit arbitrary age-based discrimination even though age is not a suspect classification and no fundamental right is involved. See, e.g., Scott, 148 F.3d at 501; Goshtasby, 141 F.3d at 770 ("The fact that age is not a suspect classification does not foreclose Congress from enforcing the Equal Protection Clause through an enactment protecting against arbitrary and invidious age discrimination.").
 
 
 26
 Finally, appellants argue that the ADEA is substantive, rather than remedial, legislation and as such exceeds Congress's power to legislate according to the standards articulated in City of Boerne. In order to qualify as remedial legislation under those standards, "[t]here must be a congruence and proportionality between the injury prevented or remedied and the means adopted to that end." 521 U.S. at ----, 117 S.Ct. at 2164. We agree with the majority of our sister circuits that have considered this issue and hold that the ADEA is sufficiently limited in scope to pass the City of Boerne test. See Migneault, 158 F.3d at 1136-39 (10th Cir.); Coger, 154 F.3d at 305-07 (6th Cir.); Scott, 148 F.3d at 501-03 (5th Cir.); Goshtasby, 141 F.3d at 771-72 (7th Cir.); contra Humenansky, 152 F.3d at 827-28 (finding that scope of ADEA exceeds congressional authority and citing Chief Justice Burger's dissent in EEOC v. Wyoming, 460 U.S. at 262-63, 103 S.Ct. 1054).
 
 Conclusion
 
 27
 We have considered all of appellants' contentions and find them to be without merit. The orders of the district courts are affirmed.
 
 
 
 [1]
 We mention Cooper first because we follow the order of the cases in the caption
 
 
 [2]
 Hereafter, the Federal Rules of Civil Procedure will be referred to as Rule ___
 
 
 [3]
 In addition, the November 1997 Memorandum Decision and Order dismissed plaintiffs' state law claims. Dismissal of those claims is not before us
 
 
 [4]
 While the briefs submitted by appellants differ slightly, we will refer to appellants' arguments without identifying whether one or both States took each position
 
 
 [5]
 At that time, § 216(b) read as follows in relevant part:
 Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected.... Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. (emphasis supplied)
 
 
 [6]
 After amendment, the section provided in relevant part:
 Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected.... An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. (emphasis supplied)
 In addition, "public agency" is defined in 29 U.S.C. § 203(x) as including "the government of a State or political subdivision thereof ... a State, or a political subdivision of a State."
 
 
 [7]
 Section 626(c) provides, in relevant part:
 Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.
 
 
 [8]
 In fact, the States admit that they are subject to the private enforcement section of the ADEA and thus can be ordered by state courts to pay damages to individuals. They dispute only whether a federal court has jurisdiction to hear ADEA cases and award such damages
 
 
 [9]
 In fact, the AARP as amici point out that Congress has named the States as "employers" on five separate occasions (in amendments to the ADEA in 1974, 1986, 1990, 1991 and 1996), expressing a clear intent to subject the States to liability under the Act in a private suit in federal court
 
 
 [10]
 Section 626(b) of the ADEA provides, in relevant part, as follows:
 The provisions of this chapter [the ADEA] shall be enforced in accordance with the powers, remedies, and procedures provided in section[ ] 216 ... of this title [29 U.S.C.]....
 Section 216(b) of the FLSA now provides, in relevant part, as follows:
 Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected.... An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction....