Dr. Janice W. ANDERSON, Ph.D.,
Plaintiff–Appellee,

v.

STATE UNIVERSITY OF NEW YORK,
College at New Paltz, Board of Trustees
of the State University of New York,
The Board of Regents of the State University of New York, Dr. Carl T. Hayden,
Ph.D., in his official capacity as Chancellor of the State University of New
York, Dr. Alice Chandler, Ph.D., in her
official capacity as President and Chief
Administrator of the State University of
New York, College of New Paltz, and
Dr. Thomas A. Bartlett, Ph.D., in his
official capacity as Chancellor of the
State University of New York, Defendants–Appellants.

Docket No. 98–7025.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1998.

Decided Feb. 24, 1999.

Andrea Oser, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, of counsel), for Defendants–Appellants.

Ronald G. Dunn, Gleason, Dunn, Walsh & O'Shea, Albany, NY, for Plaintiff–Appellee.

Seth M. Galanter, Department of Justice, Washington, DC (Bill Lann Lee, Acting Assistant Attorney General, Jessica Dunsay Silver, of counsel), for United States as Intervenor. (Janice Goodman and Sean Farhang, Goodman & Zuchlewski LLP, New York, NY, submitted a brief for amici curiae National Employment Lawyers Association, National Women's Law Center, National Partnership for Women & Families, Equal Rights Advocates, and Employment Law Center).

Before: LEVAL and STRAUB, Circuit Judges, and POLLACK, District Judge.*

PER CURIAM:

Defendants State University of New York, College at New Paltz, et al., appeal from a December 12, 1997, order of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Chief Judge*), denying their motion to dismiss Plaintiff Dr. Janice W. Anderson's claim pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), for lack of subject matter jurisdiction under the Eleventh Amendment. For the reasons that follow, we hold that the District Court has jurisdiction over the plaintiff's EPA claim because Congress abrogated the States sovereign immunity through a valid exercise of its powers under § 5 of the Fourteenth Amendment.

## BACKGROUND

Dr. Anderson brought this suit against various state entities and officers, alleging violations of the EPA, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* When she filed her complaint, Dr. Anderson was employed as an Assistant Professor at the State University of New York, College at New Paltz (SUNY New Paltz). Dr. Anderson began teaching in the SUNY New Paltz Communications Department in 1984 and was granted a continuing appointment or tenure in 1991. She alleges that since 1984, she has been paid less than male faculty of similar rank at SUNY New Paltz despite her equivalent or superior qualifications, record, and workload. She began complaining to responsible officials at SUNY New Paltz in 1991, and she contends that she was denied a merit increase in salary in January 1993 as a result of such complaints. She filed her complaint in this case in the Northern District of New York on July 19, 1995.

On November 7, 1997, the defendants moved to dismiss the plaintiff's EPA and New York Human Rights Law claims for

---

lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and moved for summary judgment on the plaintiff's remaining claims. With respect to the EPA claim, the defendants argued that as entities or officers of the State of New York, they were entitled to Eleventh Amendment immunity on this claim and therefore could not be sued in federal court. By bench opinion of December 8, 1997, and by subsequent order filed December 15, 1997, the District Court granted the defendants' motion for summary judgment in part and denied it in part, and denied the plaintiff's cross-motion for partial summary judgment in its entirety.

▇ In its bench opinion and subsequent order, the District Court also denied the defendants' motion to dismiss the EPA claim for lack of subject matter jurisdiction and held that, in extending the EPA to the States, Congress abrogated the States Eleventh Amendment immunity through its remedial powers under § 5 of the Fourteenth Amendment. The defendants filed a timely notice of appeal of this aspect of the District Court's decision on December 18, 1997.[1] We have jurisdiction to review this order because orders denying States' claims of Eleventh Amendment immunity fall under the collateral order doctrine, which allows immediate appellate review in certain circumstances of what would otherwise be non-final decisions. *Cooper v. New York State Office of Mental Health,* 162 F.3d 770, 772 (2d Cir.1998); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).[2]

## DISCUSSION

▇ We review *de novo* a district court's legal conclusion regarding its subject matter jurisdiction on a Rule 12(b)(1) motion. *See Cooper,* 162 F.3d at 773.

▇ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to mean that states, as sovereigns, are immune from suit in federal court absent consent or abrogation of that immunity by Congress. *See Seminole Tribe v. Florida,* 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In this case, New York has not consented to suit in federal court, so the defendants are subject to suit in federal court only if Congress, in enacting the EPA, effectively abrogated the States' sovereign immunity. In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has unequivocally expresse[d] its intent to abrogate the immunity, *id.* at 55, 116 S.Ct. 1114; and second, whether Congress has acted "pursuant to a constitutional provision granting Congress the power to abrogate," *id.* at 59, 116 S.Ct. 1114. The Court has made clear that Congress may abrogate state immunity when it acts pursuant to its enforcement power under § 5 of the Fourteenth Amendment. *See id.* (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)).

The EPA was passed in 1963 as an amendment to the Fair Labor Standards Act of 1938 (FLSA). *See* Equal Pay Act of 1963, Pub.L. No. 88–38, 77 Stat. 56 (1963) (codified at 29 U.S.C. § 206(d)). As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions. Thus, when the FLSA was amended in 1974 to allow for suit "against any employer (including a public agency) in any Federal or State court of competent

---

1. The plaintiff also appealed that portion of the District Court's order that granted summary judgment to the defendants on the plaintiff's Title VII wage discrimination claims. The defendants moved to dismiss that appeal for lack of appellate jurisdiction, and a panel of this Court granted that motion by order filed on February 10, 1998.

2. The District Court also certified this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). However, a panel of this Court denied the defendants' subsequent motion under § 1292(b) for leave to appeal as unnecessary since the order appealed from was immediately appealable under the collateral order doctrine.

jurisdiction," the scope of the EPA was extended as well. *See* FLSA Amendments of 1974, Pub.L. No. 93–259, § 6(d)(1), 88 Stat. 55, 61 (amending 29 U.S.C. § 216(b)). In *Close v. New York*, 125 F.3d 31 (2d Cir.1997), we found that § 216(b) of the FLSA as amended in 1974 evinces a clear intent to abrogate the States' sovereign immunity by allowing suit in federal courts. *Id.* at 36. The defendants concede that the EPA, utilizing the enforcement mechanism of the FLSA, satisfies the first prong of the *Seminole Tribe* test. Therefore, we turn to the sole question raised by this appeal whether Congress enacted the EPA pursuant to a valid exercise of its § 5 remedial power under the Fourteenth Amendment.

The defendants first contend that because Congress enacted the EPA pursuant to its authority under the Commerce Clause and not pursuant to its § 5 power, it did not have the power to abrogate the States sovereign immunity. They maintain that neither the EPA nor the 1974 FLSA amendments can be upheld as § 5 legislation because the text of the act and amendments and their legislative history do not refer to § 5 specifically or the Fourteenth Amendment generally.

■ It is true that in passing the original EPA in 1963 (which then covered only private employers) Congress explicitly relied on its Commerce Clause powers. It is also true that in passing the 1974 FLSA Amendments, which extended coverage of the EPA to the states and are at issue here, Congress was silent as to the source of its authority. The defendants thus argue that we should presume Congress acted under its Commerce Clause powers in 1974, just as it did in 1963. However, as we recently stated in rejecting a similar Eleventh Amendment challenge to suits against a State under the Age Discrimination in Employment Act, the failure of Congress to use the words 'section 5' or 'Fourteenth Amendment' or 'equal protec-

tion' is not controlling. As long as Congress could have enacted the [statute] pursuant to § 5, Congress need not have declared its source of power.[3] *Cooper,* 162 F.3d at 777 (internal citations omitted); *see also EEOC v. Wyoming,* 460 U.S. 226, 243–44 n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Moreover, we agree with those other Circuits that have considered this issue that the EPA, which prohibit[s] arbitrary sex-based wage disparities, *Varner v. Illinois State Univ.,* 150 F.3d 706, 714 (7th Cir.1998), *petition for cert. filed,* —— U.S. ——, 67 U.S.L.W. 3469 (U.S. Jan. 11, 1999) (No. 98–1117), constitutes an exercise of Congress's § 5 powers. *See, e.g., Ussery v. Louisiana,* 150 F.3d 431, 436–437 (5th Cir.1998), *cert. dismissed,* —— U.S. ——, 119 S.Ct. 1161, —— L.Ed.2d —— (1999) (No. 98–739); *Varner,* 150 F.3d at. 712–14; *Timmer v. Michigan Dept. of Commerce,* 104 F.3d 833, 838 (6th Cir.1997); *Usery v. Charleston County Sch. Dist.,* 558 F.2d 1169, 1171 (4th Cir.1977); *Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 155 (3d Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).

■ The defendants also argue that the EPA is substantive not remedial legislation, and that in light of the Supreme Courts decision in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), such substantive legislation cannot be the basis for abrogating state immunity because it exceeds Congress § 5 authority. In particular, they point out that the EPA does not require a showing of an employers purposeful discrimination, which they assert is otherwise required for § 5 legislation. Alternatively, the defendants maintain that the statute does not qualify as remedial because it lacks a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. *Id.,* 521 U.S. at ——, 117 S.Ct. at 2164.

---

3. In *Close,* we held that a suit under the overtime compensation provision of the FLSA against the State of New York was barred by the Eleventh Amendment. Because the overtime compensation provision of the FLSA was enacted pursuant to the Interstate Commerce Clause, following the Supreme Court's decision in *Seminole Tribe,* we concluded that Congress lacked the power to abrogate New York's sovereign immunity. *See* 125 F.3d at 38–39. However, the overtime compensation provision at issue could not have been enacted pursuant to § 5 of the Fourteenth Amendment, and our decision did not remotely address whether Congress could have enacted the EPA pursuant to § 5. *See Cooper,* 162 F.3d at 777.

■ We adopt the reasoning of the Seventh Circuit in *Varner* and hold that the EPA is remedial legislation that satisfies the congruence and proportionality test of *City of Boerne. See Varner*, 150 F.3d at 714–16. It is true that the EPA does not require an employee to show purposeful discrimination on the part of an employer to recover. However, we note that we have previously held that disparate impact claims under Title VII are appropriate under § 5 even without a showing of purposeful discrimination. *See Guardians Assn. of the New York City Police Dep't v. Civil Serv. Comm'n*, 630 F.2d 79, 88 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981); *see also Varner*, 150 F.3d at 714–15; *United States v. City of Chicago*, 573 F.2d 416, 421–24 (7th Cir.1978). In any event, we disagree with the defendants' argument that the EPA is not remedial legislation because the statute does not require a showing of discriminatory intent. *See Varner*, 150 F.3d at 716 ( [W]e reject the [State's] contention that the Equal Pay Act automatically constitutes inappropriate legislation merely because it proscribes some constitutional conduct.). Congress can enact legislation under its § 5 enforcement powers which deters or remedies constitutional violations ... even if in the process it prohibits conduct which is not itself unconstitutional. *City of Boerne*, 521 U.S. at ——, 117 S.Ct. at 2163.

Finally, the EPA's provisions are not out of proportion to the harms that Congress intended to remedy and deter. *Varner*, 150 F.3d at 717. Since the EPA provides an employer with four affirmative defenses, including the ability to prove that the wage differential [is] based on any other factor other than sex, 29 U.S.C. § 206(d)(1)(iv), the EPA reaches only those wage disparities for which the employee's sex provides the sole explanation. *See Varner*, 150 F.3d at 717; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995) (describing elements of an EPA claim). Thus, the statute is remedial legislation reasonably tailored to remedy intentional gender-based wage discrimination and is sufficiently limited in scope to satisfy the *City of Boerne* test. *Varner*, 150 F.3d at 717.

## CONCLUSION

For all of the foregoing reasons, the order of the District Court is affirmed.