Michael **ROBERTS**, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES,** Defendant.

and

**United States of America, Intervenor.**

No. 95–CV–223C(F).

United States District Court, W.D. New York.

June 2, 1999.

Wyssling, Schwan & Montgomery, Richard H. Wyssling, of Counsel, Buffalo, for Plaintiff.

Elliot L. Spitzer, New York State Attorney General, Jerry McGrier, Sr., Assistant Attorney General, of Counsel, Buffalo, for New York State.

Janet L. Reno, Attorney General, John L. Wodatch, Renee M. Wohlenhaus, Bebe Novich, of Counsel, Disability Rights Section, United States Department of Justice, for United States of America, Intervenor.

Denise E. O'Donnell, United States Attorney, Mary E. Fleming, Assistant United States Attorney, of Counsel, Buffalo, for Intervenor.

## ORDER

CURTIN, District Judge.

On March 16, 1999, United States Magistrate Judge Leslie G. Foschio filed his report and recommendation on plaintiff's motion for summary judgment and defendant's motion to dismiss and for summary judgment. Magistrate Judge Foschio recommended that plaintiff's motion be denied and that defendant's motion be granted (Item 37).

On March 31, 1999, the plaintiff filed objections to the report and recommendation; and on May 25, 1999, defendant filed a response urging approval of the report of the Magistrate Judge.

The court has considered all of the papers and the circumstances in this file and finds that the report and recommendation should be approved. Therefore, the plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. This case is dismissed, and judgment shall enter for defendant.

So ordered.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Honorable John T. Curtin on July 8, 1996 for report and recommendation on all dispositive motions. The matter is currently before the court on the Plaintiff's motion for summary judgment, filed February 27, 1998 (Docket Item No. 19), and Defendant New York State Department of Correctional Services' motions to dismiss and for summary judgment, filed April 9, 1998 (Docket Item No. 26).

### BACKGROUND and FACTS [1]

Plaintiff Michael Roberts ("Plaintiff") filed this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117 ("ADA") and New York Human Rights Law, N.Y. Exec. Law § 296. Plaintiff, who is a recovering alcoholic, claims that his employer, the New York Department of Correctional Services ("Defendant")("DOCS"), discriminated against him on the basis of a disability, alcoholism, by failing to provide him a position at a DOCS facility located near Buffalo, New York, where he is undergoing continuing treatment for his alcoholism. Plaintiff also claims that Defendant, by refusing to grant his requests for transfer to a facility closer to the Buffalo area or an alternative work schedule, violated the ADA by failing to provide reasonable accommodations for his disability. Plaintiff also claims that Defendant retaliated against him for his filing of a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by Defendant.

Plaintiff commenced employment with Defendant as a Corrections Officer Trainee on January 2, 1985. Plaintiff was arrested in August 1990 for Driving While Intoxicated, and received a warning letter from Defendant relating to the incident on November 3, 1990. Plaintiff's Rule 56 Statement in Support of Summary Judgment, filed February 27, 1998 (Docket Item No. 21)("Plaintiff's Rule 56 Statement"), ¶ 3. Plaintiff was diagnosed with alcoholism in November 1990 and entered an inpatient treatment program, which he completed on December 3, 1990. See Exhibit A to Plaintiff's Certified Exhibits in Support of Motion for Summary Judgment, filed February 27, 1998 (Docket Item No. 22)("Plaintiff's Certified Exhibits"). Plaintiff then entered an outpatient treatment program for alcoholism, which he completed in June 1991. Plaintiff continues to be treated for alcoholism in the Buffalo area.

By March 1988, Plaintiff had advanced to the position of Temporary Release Supervisor, Grade 18 at Defendant's Wende Correctional Facility in Alden, New York ("Wende"). This position was terminated on March 6, 1991, and Plaintiff was rehired on March 7, 1991 as Alcohol and Substance Abuse Program Assistant, Grade 14 at Wende on March 6, 1991. Plaintiff was appointed Temporary Counselor, Grade 19 at Defendant's Wyoming Correctional Facility in Wyoming, New York in December 1991.

In August 1992 Plaintiff accepted a position with Defendant as Correction Counselor, Probationary Grade 19, at Defendant's Lakeview Correctional Facility in

---

1. The fact statement is taken from the complaint, answer, and other papers filed in this action.

Lakeview, New York, located approximately sixty miles south of Buffalo, which became permanent in May of 1993. Plaintiff is currently employed by Defendant in this position. Plaintiff claims that since the commencement of his employment with Defendant, he has received "highly effective" performance reviews from his supervisors, and has continually been acknowledged as an asset to the unit he has been assigned. Complaint, ¶ 28.

Beginning in 1992, Plaintiff applied for several vacant positions, seeking employment at a facility closer to Buffalo. Plaintiff interviewed for such positions on several occasions, including interviews in March and October of 1992, May, June, and November of 1993, and January 1994. Plaintiff claims that on each of these occasions, the Defendant's interviewer was aware of his status as a recovering alcoholic. Additionally, Plaintiff asserts that on each occasion, a less qualified and less experienced individual was selected for the position.

Specifically, during the course of an interview for the Corrections Counselor position at Defendant's Albion Correctional Facility in October 1992, Plaintiff claims that the interviewer, Senior Corrections Counselor Lawrence Weingartner, mentioned Plaintiff's lack of sick accruals and referred to a "major illness" of the Plaintiff. Complaint, ¶ 15. Weingartner submitted an affidavit in which he stated that, although he did not specifically recall an interview with Plaintiff, Weingartner did not ask about medical problems, and would not inquire about alcoholism. Affidavit of Lawrence Weingartner ("Weingartner Affidavit"), Exhibit E to Defendant's Declaration in Support of Motion for Dismissal and Summary Judgment, filed April 9, 1998 (Docket Item No. 28)("Defendant's Declaration"), ¶ 4. John Roach was ultimately selected for the position. Plaintiff's Rule 56 Statement, ¶ 15.

Plaintiff then interviewed in May 1993 for the position of Correction Counselor at Defendant's Buffalo Work Release Facility. Plaintiff claims that the interviewer, Maria Tirone–Curtiss, had actual knowledge of his status as a recovering alcoholic based on a March 1993 conversation with Plaintiff. Tirone–Curtiss submitted an affidavit in which she denied any knowledge of Plaintiff's status as a recovering alcoholic. Affidavit of Maria Tirone–Curtiss ("Tirone–Curtiss Affidavit"), Exhibit D to Defendant's Declaration, ¶ 13. Although, according to Plaintiff, he was more qualified for the position and had specific work experience in the facility given his former position as Supervisor of the Work Release Program at Wende Correctional Facility, Laura Wild was selected for the position. Complaint, ¶ 17.

Plaintiff interviewed for the position of Corrections Counselor at Defendant's Wende Correctional Facility on June 6, 1993. His interviewer, Lawrence Friot, submitted an affidavit denying that he was aware of Plaintiff's alcoholism during the selection process. Affidavit of Lawrence Friot ("Friot Affidavit"), Exhibit B to Defendant's Declaration, ¶ 13. Kathleen Herrmann was ultimately selected for the position. Plaintiff's Rule 56 Statement, at 8.

On June 14, 1993, Plaintiff requested a reasonable accommodation for his disability, seeking a transfer to Wende or to the Buffalo Correctional Facility to allow him to continue treatment for alcoholism. Plaintiff's physician, Dr. Donald P. Bartlett, recommended a job transfer to a facility closer to the Buffalo area, where Plaintiff's support and treatment was based, to decrease Plaintiff' stress and increase his chances of healthy recovery in a June 29, 1993 letter to Berthlynn J. Terry, Assistant Commissioner of Defendant DOCS. Exhibit M to Plaintiff's Certified Exhibits. Defendant denied this request on January 20, 1994, Exhibit N to Plaintiff's Certified Exhibits, stating that Plaintiff had not demonstrated that his disability substantially impaired a major life activity, and he was therefore not entitled to a reasonable accommodation pursuant to the ADA. In this correspondence, Defendant advised

Plaintiff of the availability of treatment centers in the Jamestown, Dunkirk, and Cassadaga areas, and also suggested that Plaintiff speak with his supervisor regarding an alternate work schedule to enable him to attend treatment in Buffalo. Exhibit N to Plaintiff's Certified Exhibits.

Plaintiff filed a charge with the EEOC on August 20, 1993, alleging discrimination on the basis of his disability arising from Defendant's refusal to select him for the positions to which he applied, and its failure to grant his transfer request. Exhibit A to Complaint. In addition to his claims alleging intentional discrimination and refusal to provide reasonable accommodations, Plaintiff claims that Defendant retaliated against him on several occasions for the filing of the EEOC charge.

Specifically, in November 1993, John McGregor, a Corrections Counselor Trainee, was hired to fill a vacant Corrections Counselor position at Defendant's Wende Correctional Facility, although Plaintiff claims he was "clearly better qualified for the position." Complaint, ¶ 23.

While Plaintiff claims to have also requested an alternate work schedule as a reasonable accommodation on May 18, 1994, Plaintiff's Memorandum, ¶ 34, the parties dispute whether Plaintiff made such a request. Richard Savage, the current Deputy Superintendent of Programs at Defendant's Lakeview Correctional Facility, stated that no records of such a request exist, and conversations with Frank McCray the Deputy Superintendent of Programs at Lakeview in 1994, and Plaintiff's supervisor since 1992, Richard Sapienza, both of whom stated that Plaintiff never requested an alternate work schedule during 1994. Affidavit of Richard A. Savage ("Savage Affidavit"), Exhibit C to Defendant's Declaration, ¶ 6. According to Plaintiff, his request was denied on May 18, 1994. Plaintiff's Memorandum, ¶ 35.

On May 24, 1994, Plaintiff sent a resume to the Defendant's Rochester Correctional Facility in support of his application for a Correction Counselor position at the Buffalo Day Reporting Office. On June 2, 1994, the Head Account Clerk at this facility returned Plaintiff's resume. Complaint, ¶ 26.

Plaintiff applied for position as Correction Counselor at Wende Correctional Facility in September of 1994, but was notified on October 4, 1994 that he had not been selected for this position. Exhibit O to Plaintiff's Certified Exhibits.

Plaintiff filed the instant Complaint on March 20, 1995 (Docket Item No. 1)("Complaint"), claiming violations of the ADA and the New York Human Rights Law. Plaintiff filed a motion for summary judgment on February 27, 1998 (Docket Item No. 19), along with a memorandum in support of the motion. Plaintiff's Memorandum in Support of Motion for Summary Judgment, attached to Notice of Motion ("Plaintiff's Memorandum"). In this motion, Plaintiff argued that summary judgment is required, as (1) he is a disabled person within the meaning of the ADA; (2) Defendant had knowledge of his disability; (3) Defendant, having this knowledge, denied him employment in positions for which he is qualified; and (4) Defendant denied his requests for reasonable accommodations. Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Plaintiff's Memorandum"), attached to Plaintiff's Notice of Motion, filed February 27, 1998 (Docket Item No. 20), at 11.

Specifically, Plaintiff argues that Defendant discriminated against him by (1) failing to consider placing him in the vacant Counselor positions at the Wende facility, (2) failing to transfer him to the Buffalo facility, and (3) otherwise failing to provide a reasonable accommodation. Complaint, ¶ 59. Plaintiff argues that he is a qualified individual with a disability under the ADA, as he is a person with a disability who has the skill, experience and education for the Corrections Counselor position and can perform the essential functions of this job with reasonable accommodation to either

the Wende Correctional Facility or the Buffalo Corrections Facility. Complaint, ¶ 49. According to Plaintiff, through Defendant's actions, Defendant has denied him the opportunity to work in a facility closer to his treatment and support network located in the Buffalo area, which would decrease his stress and increase his chances for overall recovery. Complaint, ¶ 60. Plaintiff alleges that he has experienced emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other losses. *Id.* Plaintiff also argues that the Defendant violated § 296 of the New York Executive Law.

Defendant moved, on April 9, 1998, for dismissal under Fed.R.Civ.P. 12(b)(1), and cross-moved for summary judgment on the merits. Defendant's Declaration in Support of Defendant's Motion for Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1) and for Summary Judgment pursuant to Fed. R.Civ.P. 56, filed April 9, 1998 (Docket Item No. 28). In support of its motion for dismissal, Defendant submitted the affidavits of Leslie Becker, Lawrence Friot, Richard A. Savage, Maria B. Tirone–Curtiss, and Lawrence Weingartner. Exhibits A–E to Defendant's Declaration in Support of Motion to Dismiss and for Summary Judgment.

Defendant submitted a memorandum on April 9, 1998 (Docket Item No. 27)("Defendant's Memorandum") in support of its motions, arguing (1) Plaintiff has failed to state a claim for which relief can be granted, as he has failed to allege that he is a disabled individual within the meaning of the ADA; (2) Plaintiff's request for a transfer was not a request for reasonable accommodation within the ADA; (3) the court lacks jurisdiction because the ADA unconstitutionally seeks to abrogate the Eleventh Amendment immunity of the Defendant as an arm of New York State. Defendant's Memorandum at 5–13. In support of its motion for summary judgment, Defendant submitted a Statement of Uncontested Material Facts on April 9, 1998 (Docket Item No. 29).

Plaintiff responded to Defendant's motions on May 15, 1998, arguing (1) the court has jurisdiction over this matter, as the ADA effectively abrogates the Eleventh Amendment, and persons with disabilities with disabilities are a suspect class for purposes of the Fourteenth Amendment's equal protection clause. Plaintiff's Response to Defendant's Motions for Dismissal and Summary Judgment, filed May 15, 1998 (Docket Item No. 33)("Plaintiff's Response") at 3–8. Plaintiff further argued that he is disabled within the meaning of the ADA, and that his request for transfer was a request for a reasonable accommodation. *Id.* at 8–14.

The United States of America moved for leave to intervene on September 23, 1998 (Docket Item No. 35), for the sole purpose of defending the constitutionality of § 502 of the ADA. Motion to Intervene at 2. The court granted the motion to intervene on September 29, 1998 (Docket Item No. 36). However, no brief was filed on behalf of the Intervenor.

### DISCUSSION

#### 1. Subject Matter Jurisdiction

The ADA, 42 U.S.C. § 12101 et seq. (1990) creates a cause of action in a district court in favor of any person who has been subjected to discrimination in employment based upon a disability. 42 U.S.C. § 12112 (1992). The discriminatory conduct is actionable if the disability is one which substantially limits a major life activity. 42 U.S.C. § 12102(2)(A). Such actions may be brought against any employer, including states and other public agencies. 42 U.S.C. §§ 12111(2), 12111(5).

█ The Eleventh Amendment prohibits actions against a state by an individual party in federal court in the absence of the state's consent to such jurisdiction.[2]

2. The Eleventh Amendment states, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

*Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). As a state agency, the New York Department of Corrections Services ("DOCS") is considered an "arm of the State" for purposes of the Eleventh Amendment. *Murphy v. Grabo*, 1998 WL 166840, *5 (N.D.N.Y.1998).

Defendant contends that insofar as the ADA applies to state employees, including Plaintiff, by providing a cause of action against the state in this court, such action is barred by the Eleventh Amendment and this court lacks subject matter jurisdiction. Defendant's Memorandum at 10. Plaintiff and Intervenor United States argue that the ADA does not violate the Eleventh Amendment, as Congress, in enacting the ADA, validly abrogated the Eleventh Amendment pursuant to its authority under § 5 of the Fourteenth Amendment, which specifically authorizes congressional enforcement of the Fourteenth Amendment's guarantees of due process and equal protection of the laws against state action. Plaintiff's Response to Defendant's Motion at 7–8.

■ It is established that Congress may abrogate Eleventh Amendment immunity if Congress has unequivocally stated its intent to do so and has acted pursuant to a valid grant of constitutional power. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55, 68, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Cooper v. New York State Office of Mental Health*, 162 F.3d 770, 773 (2d Cir.1998)(upholding against Eleventh Amendment challenge ADEA applicability to state employer as enacted pursuant to § 5 of the Fourteenth Amendment); *Coolbaugh v. State of Louisiana*, 136 F.3d 430, 433 (5th Cir.1998)(ADA constitutional under Eleventh Amendment as within congressional enforcement power under § 5 of the Fourteenth Amendment); *Crawford v. Indiana Dep't of Corrections*, 115 F.3d

481, 486 (7th Cir.1997)(same); *Clark v. California*, 123 F.3d 1267, 1270–71 (9th Cir.1997)(same). In the case of the ADA, Congress has clearly stated its intention to abrogate the states' Eleventh Amendment immunity. The ADA provides that "[a] state shall not be immune under the eleventh amendment ... from an action in Federal court ... for a violation of this chapter." 42 U.S.C. § 12202. While the Second Circuit has not yet addressed the question, other courts of appeals have found this statement of congressional intention in the ADA satisfies the requirement established in *Seminole Tribe, supra*. *See Coolbaugh, supra*, at 433; *Clark, supra*, at 1269–70.

■ The court now turns to the question of whether 42 U.S.C. § 12202 was validly enacted pursuant to § 5 of the Fourteenth Amendment.[3] As relevant, the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." Section 5 of the Amendment provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. While Congress's power to legislate under § 5 is broad, it must not attempt to create new constitutional protections beyond those established by the courts; rather, the exercise of such power must be limited to the preventing or remedying of unconstitutional conduct. *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2163, 138 L.Ed.2d 624 (1997)(invalidating Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* ("RFRA") as beyond enforcement power under § 5 of the Fourteenth Amendment).

Defendant argues that any attempt to abrogate the Eleventh Amendment fails where the legislation is on behalf of a

of the United States by citizens of another state, or by the citizens or subjects of any foreign state." U.S. Const. amend XIV.

3. Although not relevant to the issue presented, the ADA was also enacted pursuant to the grant of legislative authority in the Interstate Commerce Clause. *See Crawford, supra,* at 487.

group of persons not considered a suspect class for equal protection purposes. Defendant's Memorandum at 11. Although the Supreme Court has not directly addressed the issue, the Second Circuit has explicitly refused to impose this limitation on Congress's enforcement power to enact legislation pursuant to § 5 of the Fourteenth Amendment. *See Cooper, supra,* at 777 (Congress acted within its power pursuant to § 5 of the Fourteenth Amendment in enacting the ADEA, as "Congress has the power to prohibit arbitrary age-based discrimination, even though age is not a suspect classification and no fundamental right is involved.").

■ Further, the disabled, although not a suspect class for purposes of equal protection analysis, are nonetheless a class of persons entitled to protection under the Equal Protection Clause. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To require that legislation enacted pursuant to § 5 be addressed to a suspect class in order to properly abrogate the Eleventh Amendment would deny the disabled the equal protection of the laws to which they are entitled. *See Williams v. Ohio Dep't of Mental Health,* 960 F.Supp. 1276, 1281 (S.D.Ohio 1997)(while mentally retarded may not be suspect class entitled to heightened scrutiny, the Supreme Court has clearly recognized that the mentally retarded are entitled to constitutional protection under the Fourteenth Amendment.).

■ Contrary to Defendant's assertion, in enacting the ADA, Congress acted within its enforcement power pursuant to § 5 of the Fourteenth Amendment. As the Supreme Court has stated, to properly exercise congressional authority under § 5, "[t]here must be a congruence and

proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne, supra,* at 2164. The court finds that in extending the ADA's protections against a state, Congress acted within its power under § 5 to enforce the right of disabled persons, as defined by the ADA, to the Fourteenth Amendment's guarantee to equal protection of the law. Further, the court finds that the ADA constitutes remedial legislation which is a congruent and proportional legislative response to the invidious discrimination historically perpetuated against handicapped persons in American society.

First, the Supreme Court established in *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) that the mentally disabled are protected against unequal protection of the laws based on distinctions for which there is no rational basis. *City of Cleburne, supra,* at 450, 105 S.Ct. 3249. Such protection has been held to extend to persons suffering from physical as well as mental handicaps. *Coolbaugh, supra,* n. 1 at 433 *(citing Suffolk Parents of Handicapped Adults v. Wingate,* 101 F.3d 818, 824–27 (2d Cir.1996)(applying rational basis standard to claims of handicapped individuals who challenged a state's denial of funding), *cert. denied,* 520 U.S. 1239, 117 S.Ct. 1843, 137 L.Ed.2d 1047(1997)). *See also City of Cleburne, supra,* at 445, 105 S.Ct. 3249 (listing "the aging, the disabled, the mentally ill, and the infirm" as groups indistinguishable from the mentally disabled for equal protection purposes). Thus, disabled persons are within the protection of the Equal Protection Clause and Congress may grant remedies to prevent and redress the effects of unconstitutional conduct against them.[4] *Coolbaugh, supra,*

---

4. Legislation addressing other invidious characteristics such as race, gender, ethnicity, and religious belief has been upheld as validly abrogating the Eleventh Amendment. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)(back pay

and attorney fee awards may be awarded to individuals asserting Title VII claims against state agencies, as Title VII validly abrogates the Eleventh Amendment); *Frederick v. United Cerebral Palsy & Handicapped Children's Association of Syracuse, Inc.,* 1998 WL 460244,

at 433 (upholding regulation prohibiting imposing fee for handicapped parking permit as within § 5); *Crawford, supra,* at 486 (sustaining ADA challenge by sightless prisoner to state prison's failure to provide reasonable access to prison dining hall, as "[i]nvidious discrimination by governmental agencies . . . violates the equal protection clause even if the discrimination is not racial, though racial discrimination was the original focus of the clause."). *Contra Brown v. North Carolina Div. of Motor Vehicles,* 166 F.3d 698, 1999 WL 66089, *7–8 (4th Cir.1999)(ADA regulation prohibiting public entities from charging a fee to cover costs of accessibility programs for the disabled invalid, as beyond the remedial scope of Congress' enforcement power under Fourteenth Amendment); *Kilcullen v. New York State Dep't of Transportation,* 33 F.Supp.2d 133 (N.D.N.Y. 1999)(court lacks subject matter jurisdiction over employment discrimination claim of plaintiff with epilepsy and learning disability, as ADA's reasonable accommodation requirement, and employment anti-discrimination provision which it contains, exceed Congress' enforcement power under § 5 the Fourteenth Amendment).

Second, the protection and remedies as granted by the ADA are both congruent and proportional to the existence of denials of equal protection to disabled persons resulting from state action, both direct and indirect. *See City of Boerne, supra,* at 2164. In the legislative findings upon which the ADA was based, Congress determined that 43 million Americans with disabilities suffer from discrimination based on their status as handicapped persons in employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services thereby constituting a "pervasive social problem." 42 U.S.C. § 12101(a)(1995). Additionally, Congress relied upon a broad array of studies and reports documenting the existence of irrational forms of discrimination against the disabled. *Coolbaugh, supra,* at 436. The remedies provided to the disabled by the ADA are neither "draconian nor overly sweeping." *Id.* at 437. For example, and as relevant to the instant case, the ADA protects an otherwise qualified disabled employee from discrimination based on his disability if such disability may be reasonably accommodated without causing an undue burden. *See* 42 U.S.C. § 12112(b)(5)(A); *Coolbaugh, supra,* at 437 (citing other examples of reasonable requirements specifically directed to particular forms of barriers to access for disabled persons as enacted by the ADA and examples of specific benefits to the general economy resulting from assuring increased participation by disabled persons in the daily life of society in general).

■ There is, therefore, no basis upon which to find that in enacting the ADA Congress exceeded its power under § 5 of the Fourteenth Amendment. In contrast to the broad provisions of the RFRA, invalidated in *City of Boerne, supra,* the ADA is founded upon a strong and persuasive record sufficient to sustain the need for congressional enforcement of the right to equal protection extended to disabled persons by the Supreme Court in *City of Cleburne, supra.* While it may be the case that there are some forms of discrimination against the disabled which could conceivably be justified under the rational basis test established in *City of Cleburne,* and thus not a violation of the Equal Protection Clause, *Kilcullen, supra,* at 144–45, the fact that the ADA may reach conduct not in itself unconstitutional, and thus intrude upon areas of autonomy reserved to the states, does not thereby require finding the ADA as applied to the states is beyond congressional power under § 5. *City of Boerne, supra,* at 2163; *Coolbaugh,*

---

*2 (N.D.N.Y.1998)(Congress validly abrogated states' Eleventh Amendment immunity from suit in enacting Title VII, which addresses discrimination on the basis of race, color, religion, and national origin under Eleventh Amendment).

*supra*, at 434. Thus, given Congress's well documented findings of the "serious and widespread discrimination against the disabled," *Coolbaugh, supra*, at 437, the ADA's remedies satisfy the congruence and proportionality test of *City of Boerne, supra.*

This finding is further supported by a key factual difference between the core problems of perceived unconstitutional conduct sought to corrected by the RFRA and those to whom the ADA is directed. The right of free exercise of religion sought to be protected by RFRA depended upon the existence of valid religious beliefs, matters which by their nature are difficult for courts to assess in contested proceedings. *City of Boerne, supra*, at 2170. On the other hand, whether a person suffers from a disability substantially affecting a major life activity, the threshold for application of the ADA, 42 U.S.C. § 12102(2)(A), is a question which while not free from all dispute, is one upon which the courts can seek assistance from a body of more objectively based medical and related physical information, thereby lessening the risk of extending the ADA's protections into realms reserved to state regulation by the Constitution. *Compare City of Boerne, supra*, at 2170 (noting that "[c]laims that a law substantially burdens someone's exercise of religion will often be difficult to contest.").

Nor is there merit in the view that the ADA exceeds the proportionality and congruence tests established by *City of Boerne* on the ground that the states will not be permitted to show that, given their substantial financial resources, they nevertheless will not be required to incur excessive economic burdens of compliance notwithstanding that the ADA's limitation against "undue hardship." *See Kilcullen, supra*, at 148 (finding ADA violates Eleventh Amendment because the reasonable accommodation requirement may result in unlimited burdens being imposed upon a state defendant).

First, imposing economic burdens upon governmental defendants without limits would render the statute's "undue hardship" standard, 42 U.S.C. § 12112(5)(A), a nullity contrary to express congressional intent. Second, such sweeping remedies would themselves raise serious questions as to their constitutionality equally contrary to established canons of statutory construction. A more reasoned analysis will include consideration of the state's constitutional and statutory responsibilities in light of its historical levels of revenues and appropriations along with the state's other budgetary capabilities, much the same way a court would evaluate the financial capacity of a non-governmental defendant to respond to a reasonable accommodation requirement. The validity of the ADA's abrogation of Eleventh Amendment immunity should not turn on such "floodgate" arguments absent more concrete evidence that the courts will in fact interpret the ADA to cause such supposed major financial disruptions in the normal operation of state governments. Moreover, recent studies indicate three-fourths of all accommodations made by employers for disabled employees cost under $100, and some major employers have found that, rather than causing economic hardship, providing such accommodations has resulted in a "more productive and profitable workplace." Albert R. Hunt, *The Disabilities Act is Creating a Better Society*, WALL ST. J., March 11, 1999, at A23.

Based on the foregoing, Defendant's motion to dismiss on the ground that the court lacks subject matter jurisdiction to address Plaintiff's ADA claim should be DENIED.

### 2. *Plaintiff's ADA Claim*

As stated, Plaintiff moved for summary judgment on his ADA claim, alleging that Defendant discriminated against him on the basis of his alleged disability by selecting non-disabled individuals with lesser qualifications for the positions he sought, and denying Plaintiff's requests for reas-

signment to a correctional facility in the Buffalo area. Plaintiff's Memorandum in Support of Summary Judgment at 1. Plaintiff further claims that Defendant violated the ADA by failing to provide him reasonable accommodations for his disability in violation of the ADA, as Defendant refused to reassign Plaintiff, or rearrange his work schedule. *Id.* at 1–2. Defendant argues that dismissal of Plaintiff's ADA claim is warranted, as Plaintiff has failed to show that he is a disabled individual within the meaning of the ADA. Defendant's Memorandum at 5.

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255, 106 S.Ct. 2505; *Rattner, supra,* at 209.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505. *See also Lipton v. The Nature Company,* 71 F.3d 464, 469 (2d Cir.1995). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex, supra,* at 322–23, 106 S.Ct. 2548.

In an employment discrimination case, a plaintiff must show circumstances that permit an inference of discrimination based on impermissible factors. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). When the defendant moves for summary judgment on the ground that there is an absence of evidence to support this essential element, the plaintiff's burden of producing such evidence in opposition to the motion is *de minimis. Goenaga, supra,* at 18. However, if the defendant has made a showing sufficient to suggest the absence of any genuine issue of material fact, the plaintiff must come forward with evidence that would be sufficient to support a jury verdict

in his favor, and may not rely simply on conclusory statements. *Goenaga, supra,* at 18. Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

A plaintiff who raises a claim of disability discrimination bears the initial burden of establishing a *prima facie* case. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). Specifically, Plaintiff must demonstrate (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Ryan, supra,* at 869; *Glowacki v. Buffalo General Hospital,* 2 F.Supp.2d 346, 350 (W.D.N.Y.1998). Defendant has not disputed that it is an entity subject to the ADA. Accordingly, the court turns to an evaluation of whether Plaintiff has demonstrated that he suffers from a disability within the meaning of the ADA.

The ADA states that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). "Disability" under the statute is defined as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

■ In order to demonstrate that he is a disabled individual under the ADA, a plaintiff must prove two elements (1) that he has a physical or mental impairment; and (2) that such impairment substantially limits one or major life activities. *Wernick, supra,* at 383; *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 390 (S.D.N.Y.1998); *Johnson v. St. Clare's Hospital & Health Center,* 1998 WL 236235, *7–8 (S.D.N.Y.1998). The Second Circuit has held that alcoholism may qualify as a disability within the meaning of the ADA. *Buckley v. Consolidated Edison Co. of New York,* 127 F.3d 270, 273 (2d Cir. 1997). In this case, in addition to his averments in the pleadings, Complaint, ¶ 11, Plaintiff submitted a physician's certification certifying his treatment for alcoholic dependence in November of 1990. Exhibit A to Plaintiff's Certified Exhibits. Defendant has not disputed Plaintiff's assertion that he is a recovering alcoholic. Based on this evidence, Plaintiff has sufficiently demonstrated that he has a mental or physical impairment recognized by the ADA.

■ However, Plaintiff has failed to demonstrate that his alcoholism substantially interfered with a major life activity, and has therefore failed to establish a *prima facie* case of discrimination in violation of the ADA. Alcoholism is not a disability *per se* under the ADA. *Burch v. Coca–Cola Co.,* 119 F.3d 305, 316 (5th Cir.1997); *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1317 (S.D.Tex.1997). As the Second Circuit stated in *Buckley*

while former drug users are not barred from invoking the Act's protection, they, like everyone else making a claim under the ADA, are required to demonstrate that they have a "disability" covered by the Act. They must, for example, show that they have an impairment that 'substantially limits one or more ... major life activities.' ... the mere status of being a recovering alcohol or substance abuser does not, on its face, appear to amount to a [substantial limitation on a major life activity].

*Buckley, supra,* at 273; *see also Burch, supra,* at 316 n. 9 (while alcoholism may "rise to the level of a disability" in some circumstances, it is insufficient for plaintiff to merely state that he is an alcoholic). As with all disabilities, an individualized inquiry into the effect an impairment such as

alcoholism has on the life of an individual is required. *Burch, supra,* at 317.

To qualify for protection under the ADA, Plaintiff must show that his alcoholism substantially limits a major life activity. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(g); *Reeves v. Johnson Controls, Inc.,* 140 F.3d 144, 150 (2d Cir.1998)(plaintiff's panic disorder with agoraphobia did not qualify as disability under the ADA, as Plaintiff failed to demonstrate that such condition substantially limited a major life activity); *Glowacki. supra,* at 351–52 (plaintiff with bipolar affective disorder failed to demonstrate that her disability substantially limited a major life activity); *Stuart v. Danka Corp.,* 986 F.Supp. 741, 744 (E.D.N.Y.1997)(plaintiff, a recovering alcoholic, failed to demonstrate that his disability substantially limited major life activity of working, and therefore failed to demonstrate the existence of a disability under the ADA).

Working is a major life activity according to the EEOC Regulations accompanying the ADA. 29 C.F.R. § 1630.2(i). Plaintiff has failed to demonstrate, in accordance with the definition of "substantial limitation" in the Regulations accompanying the ADA, that he is significantly restricted as to the condition, manner, or duration under which he can work, as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j); *Glowacki, supra,* at 351. Further, in analyzing whether plaintiff's major life activity of working is substantially limited, plaintiff's impairment must not only limit the performance of a "single, particular job," but rather must limit employment generally. 29 C.F.R. § 1630.2(j)(3)(I); *Glowacki, supra,* at 351. Plaintiff has failed to demonstrate a limitation on his employment in general in this case.

Plaintiff's failure to demonstrate substantial interference with his ability to work is indicated by the remedy he seeks in this case. Plaintiff seeks reasonable accommodations in the form of a transfer to a facility closer to Buffalo where his support and treatment network is located, or a modification of his work schedule to ease his travel between Chautauqua County and Buffalo. Plaintiff's Memorandum at 10. However, the reasonable accommodation requirement of the ADA is not triggered unless an individual first demonstrates substantial impairment of a major life activity at the time the accommodation is sought. *Burch, supra,* at 315.

Other than a communication from his physician to Assistant DOCS Commissioner Terry indicating that a job transfer for Plaintiff would "decrease his stress and improve his chances of healthy recovery," Exhibit M to Plaintiff's Certified Exhibits, Plaintiff has made no demonstration that his status as a recovering alcoholic, who last obtained treatment in 1990 for his affliction, substantially limited his ability to work or perform any other major life activity under the ADA. Plaintiff's assertion that he missed "substantial amounts of work," Plaintiff's Response to Defendant's Motion at 11, is unsupported by the record and directly contradicted by his statement in the Complaint, ¶ 28, that he has not called in sick since June 5, 1992. Moreover, the commendations and performance evaluations submitted by Plaintiff, Exhibit E to Plaintiff's Certified Exhibits, indicate that he fulfilled the minimum performance requirements of his position despite his disability. *See Stuart. supra,* at 745 (noting that plaintiff was "industrious" and "able to assume positions of significant responsibility").

The Second Circuit has emphasized that "not any limitation, but only a 'substantial' limitation, of a major life activity constitutes a disability within the meaning of the statute." *Reeves, supra,* at 151; *see also Glowacki, supra,* at 351 (noting that "[a]n impairment does not significantly restrict major life activities if it results only in mild limitations."); *Douglas, supra,* at 391 (plaintiff failed to present medical evidence that spinal condition and anxiety disorder substantially interfered with major life ac-

tivities of working and walking, and therefore failed to establish a *prima facie* case); *Johnson, supra,* at *7–8 (plaintiff, a recovering alcoholic, failed to provide medical evidence suggesting that his alcoholism substantially interfered with a major life activity, and therefore failed to establish a *prima facie* case of discrimination under the ADA); *Stuart, supra,* at 745 (plaintiff failed to present any evidence that he could not work generally or his employment was limited in any way as a result of alcoholism and therefore failed to establish *prima facie* case under ADA). Plaintiff has not demonstrated that he is suffering from a disability under § 12101(2)(A) of the ADA, and he has therefore failed to establish a *prima facie* case of discrimination in violation of the ADA.

Nor has Plaintiff established a *prima facie* case of violation of the ADA based on his past treatment for alcoholism, 42 U.S.C. § 12101(2)(B), or his being regarded by Defendant as having such an impairment, 42 U.S.C. § 12101(2)(C). 42 U.S.C. § 12102(2). Plaintiff submitted a record, although limited, of his treatment for alcoholism. Exhibit A to Plaintiff's Certified Exhibits; Complaint, ¶ 11. However, a Plaintiff asserting that he has a disability under the ADA based on a record of treatment for such disability must first demonstrate that his addiction substantially limited one or more major life activities. *See* 29 C.F.R. § 1630 ("[t]he impairment indicated in the record must be an impairment that substantially limits one or more major life activities."); *Buckley, supra,* at 274; *Burch, supra,* at 321; *Glowacki, supra,* at 352. As discussed, Plaintiff has made no such showing in this case.

Even though plaintiff has not demonstrated that he suffers from an impairment that substantially limits a major life activity within the meaning of the ADA, he may still be considered a disabled person under the ADA if he can demonstrate that he was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C); *Reeves, supra,* at 153; *Glowacki, supra,* at 352–53.

According to the Regulations, an individual "is regarded as having such an impairment" where such individual

(1) Has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*).

Plaintiff does not argue that he is substantially limited in a major life activity only because of "the attitudes of others toward [his] impairment." *Id.;* § 1630.2(*l*)(2). Nor does he deny having an impairment but assert that he is "treated by [his employer] as having a substantially limiting impairment." *Id.;* § 1630.2(*l*)(3). Accordingly, the court considers only whether Defendant treated Plaintiff's alcoholism as a disability which substantially limited a major life activity. *See Reeves, supra,* at 153.

Plaintiff asserts that Defendant became aware of his alcoholism in November 1990, referring to a warning issued by Defendant on November 2, 1990 following Plaintiff's arrest for Driving While Intoxicated. Plaintiff's Memorandum at 10; Exhibit ¶ to Plaintiff's Certified Exhibits. It is not enough for a plaintiff asserting a claim under § 12102(2)(C) to show that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA. *Colwell v. Suffolk Police Dep't,* 158 F.3d 635, 646 (2d Cir. 1998); *Reeves, supra,* at 153. The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that this perception caused the adverse employment

action. *Reeves, supra,* at 153; *Glowacki, supra,* at 352–53. In order to survive summary judgment, Plaintiff must adduce evidence that Defendant regarded him as having an impairment that substantially limited a major life activity. *Colwell, supra,* at 646.

■ Drawing all inferences in favor of Plaintiff, he has failed to demonstrate that Defendant viewed him as being substantially limited in his ability to work in his position, much less in a wide range of jobs. 29 C.F.R. § 1630.2(j)(3)(i)(an individual is substantially limited in the ability to work only if he is "significantly restricted in the ability to do perform either a class of jobs or a broad range of jobs."); *Reeves, supra,* at 154; *Colwell, supra,* at 646. The very fact that Plaintiff has continues in his employment as a Corrections Counselor at Defendant's Lakeview Correctional Facility, a position he has occupied since August of 1992, belies Plaintiff's assertion that Defendant regards him as having a disability which substantially limits a major life activity. *See Giruzzi v. Blue Cross,* 1998 WL 690981, *5 (N.D.N.Y.1998). Far from considering him to have a disability substantially limiting his ability to work, the commendations and performance reviews submitted by Plaintiff show that Defendant regards Plaintiff as a "highly effective" employee, who is an "asset to the unit he has been assigned." Complaint, ¶ 28.

Defendant has denied that Plaintiff's alcoholism played a role in its decisions not to select Plaintiff to the positions he sought. Exhibit J to Plaintiff's Certified Exhibits. Moreover, any inference that Defendant regarded Plaintiff as having a substantially limiting disability is rebutted by the sworn statements of the individuals participating in the hiring for the positions sought by Plaintiff denying knowledge of his asserted disability. Becker Affidavit, ¶ 16; Friot Affidavit, ¶ 13; Tirone–Curtiss Affidavit, ¶ 13; Weingartner Affidavit, ¶¶ 5, 6. Based on the record, Plaintiff has failed to present evidence of the existence of a material issue of fact sufficient to demonstrate that Defendant regarded his disability as substantially limiting a major life activity.

Based on the foregoing analysis, Plaintiff has not established that he is disabled within the meaning of the ADA, as he has failed to demonstrate (1) a substantial limitation of a major life activity based on his past alcoholism; (2) a record of such impairment; and (3) that Defendant regarded him as having such an impairment. Accordingly, Plaintiff has failed to show a genuine issue of material fact whether Defendant intentionally discriminated against him, or denied him the reasonable accommodations he requested, on the basis of his disability in violation of the ADA. Defendant's motion for summary judgment as to Plaintiff's ADA claim should therefore be GRANTED, and Plaintiff's motion for summary judgment should be DENIED. *See Glowacki, supra,* at 353.

To the extent Plaintiff has asserted a claim that Defendant retaliated against him for the filing of an EEOC Charge on August 20, 1993, he has failed to establish a *prima facie* case of retaliation. Other than a passing reference in the Complaint, Plaintiff has not further substantiated this claim.

■ The ADA recognizes a cause of action for retaliation. *Stuart, supra,* at 745. Under the statute, "[n]o person shall discriminate against any individual because such an individual has opposed any act or practice made unlawful by this [Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [Act]." 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) he was engaged in an activity protected by the ADA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse employment decision. *Stuart, supra,* at 745–46; *Howard v.*

*Navistar Int'l Transp. Corp.*, 904 F.Supp. 922, 930 (E.D.Wis.1995), *aff'd*, 107 F.3d 13, 1997 WL 53044 (7th Cir.1997).

■ Even construed in the light most favorable to plaintiff, his claim fails to meet the three part test for retaliation under the ADA. Although the filing of an EEOC charge is a protected activity, *see Nweke v. Prudential Ins. Co.*, 25 F.Supp.2d 203, 230 (S.D.N.Y.1998), Plaintiff has failed to demonstrate that he is an individual entitled to the protection of the ADA, and therefore Defendant's refusal to grant Plaintiff's transfer requests and hire Plaintiff to the positions he sought as alleged in Plaintiff's EEOC Complaint, Exhibit A to Complaint, cannot be considered practices "made unlawful by th[e] Act." 42 U.S.C. § 12203(a).

■ Further, Plaintiff does not provide anything other than conclusory assertions connecting the filing of his EEOC charge to the alleged adverse employment decisions, *Stuart, supra*, at 745–46, and has therefore failed to submit evidence sufficient to raise a genuine issue of material fact. *Meiri, supra*, at 998 (mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment). Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation, and his claim that Defendant retaliated against him for the filing of an EEOC Complaint is insufficient to raise a genuine issue of material fact.

### 3. *Plaintiff's New York Human Rights Law Claim*

A district court may decline supplemental jurisdiction when it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). As the court is recommending that Defendant's motion for summary judgment of Plaintiff's ADA claim be granted, no independent basis of jurisdiction exists over Plaintiff's state law claim pursuant to the New York Human Rights Law, and such claim should be DISMISSED. *See Purgess v. Sharrock*,

33 F.3d 134, 138 (2d Cir.1994); *Modeste v. Local 1199*, 850 F.Supp. 1156, 1167 (S.D.N.Y.1994), *aff'd*, 38 F.3d 626 (2d Cir. 1994).

Should the court choose to address Plaintiff's claim pursuant to the Human Rights Law as within its supplemental jurisdiction, the court finds that the New York Human Rights Law may not be applied to DOCS as an agency of the state by an action in this court. Section 296 of the New York Executive Law states, in relevant part,

[i]t shall be an unlawful discriminatory practice:

(a) For an employer ... because of the age, race, creed, color, national origin, sex or disability, or marital status of any individual, to refuse to rehire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. EXEC. LAW § 296(a)(McKinney 1993).

■ Although not directly raised by Defendant's motion, as there is no subject matter jurisdiction for this claim, the court addresses the question *sua sponte*. As Plaintiff is attempting to assert the liability of a state agency, the New York Department of Correctional Services, on the basis of a state statute, the New York Human Rights Law, this court lacks subject matter jurisdiction, as Plaintiff's state claims violate New York's immunity in this court as afforded by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)(Eleventh Amendment barred federal district court from ordering state school performing their official responsibilities to conform their conduct to state law); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 968–69 (2d Cir.1984)(plaintiff's claims pursuant to New York Constitution, Civil Rights Law, Civil Service Law, and Executive Law barred by Eleventh Amendment, as consisting of claim "that state officials

violated state law in carrying out their official responsibilities."); *Stephens v. State University of New York at Buffalo,* 11 F.Supp.2d 242, 251 (W.D.N.Y.1998)(Eleventh Amendment barred state law claims brought against state university by discharged employee for violation of § 296 of New York Human Rights Law to the extent such claim was not coextensive with claims under Title VII); *Jungels v. State University College of New York,* 922 F.Supp. 779, 784 (W.D.N.Y.1996), *aff'd,* 112 F.3d 504, 1997 WL 219065 (2d Cir.1997)(dismissing assistant professor's claim under § 296 of New York Human Rights Law alleging discrimination on the basis of age against state university, as Eleventh Amendment barred state law claims). In this case, there is no suggestion that New York waived its sovereign immunity or otherwise consented to suit in federal court on Plaintiff's state claim. *See Stephens, supra,* at 251.

Alternatively, should the District Court find it has jurisdiction over Plaintiff's state claim, Plaintiff has not shown a material issue of fact that Defendant violated the New York Human Rights Law ("NYHRL"). In adjudicating NYHRL claims, New York courts use the familiar burden-shifting framework developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 156 n. 9 (2d Cir.1998)(*citing North Shore Univ. Hospital v. Rosa,* 86 N.Y.2d 413, 633 N.Y.S.2d 462, 657 N.E.2d 483, 485 (1995);) *Glowacki, supra,* at 353.

Under the *McDonnell Douglas* framework, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*quoting McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); *Glowacki, supra,* at 350.

A complainant states a *prima facie* case of discrimination under the Human Rights Law if the individual suffers from a disability recognized under the NYHRL. *Reeves, supra,* at 156 n. 9; *Glowacki, supra,* at 354; *McEniry v. Landi,* 84 N.Y.2d 554, 620 N.Y.S.2d 328, 644 N.E.2d 1019, 1021 (1994). The NYHRL defines disability more broadly than does the ADA, in that unlike the federal statute, the NYHRL does not require a plaintiff to identify a major life activity that is substantially limited by his impairment. *Reeves, supra,* at 154.[5] Alcoholism is considered a "disability" for purposes of § 296 of the Human Rights Law. *McEniry, supra,* at 1021. Although, as discussed, Plaintiff has failed to demonstrate that he is a disabled person within the meaning of the ADA, and therefore failed to establish a *prima facie* case under that statute, the court finds that, based on the record submitted by Plaintiff, he has demonstrated a disability within the meaning of the NYHRL, and has therefore established a *prima facie* case. *See Reeves, supra,* at 154–56 (as New York Human Rights law does not require a plaintiff to demonstrate that his disability substantially limits a major life activity, Plaintiff, who failed to demonstrate that he was disabled within

---

**5.** The NYHRL defines "disability" in pertinent part as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques ...." N.Y. Exec. Law § 292(21) (McKinney's 1993).

the meaning of the ADA, nonetheless established a *prima facie* case under the Human Rights Law based on mental disorder); *Glowacki, supra,* at 353 (same).

▆▆▆ Once a *prima facie* case is established, the burden of proof shifts to the employer to demonstrate that the disability prevented the employee from performing the duties of the job in a reasonable manner or that the employee's termination was motivated by a legitimate, nondiscriminatory reason. *Reeves, supra,* at 156. In this case, Defendant has articulated a legitimate, nondiscriminatory reason for its failure to select Plaintiff to the positions sought. In correspondence with the EEOC, Defendant stated that the fact that Mr. Roberts was not selected was not related, either directly, or indirectly, to his status as a recovering alcoholic. Letter from Berthlynn Terry to John Thompson, EEOC Investigator, dated February 1, 1994, Exhibit J to Plaintiff's Certified Exhibits. Rather, according to Defendant, "in each case, the selected candidate not only met the minimal qualifications for the position, but was more qualified than [Plaintiff], either by way of education or years of counseling experience." *Id.* Defendant's legitimate, non-discriminatory reason is corroborated by the affidavits of Leslie Becker, Lawrence Friot, Maria Tirone–Curtiss, and Lawrence Weingartner, all of whom denied having any knowledge of Plaintiff's alcoholism at the time of his interviewing, or during the hiring process. Exhibits A, B, D, and E to Defendant's Declaration in Support of Motion. Becker, Friot, and Tirone–Curtiss stated that the individual hired to each position sought by Plaintiff had more counseling-related experience. Becker Affidavit, ¶ 11–12; Friot Affidavit, ¶¶ 9–11; Tirone–Curtiss Affidavit, ¶ 8. Based on the record submitted, Defendant has articulated a legitimate, non-discriminatory reason for its failure to appoint Plaintiff to the positions he sought.

As the Defendant has met its burden, the third step of the *McDonnell Douglas* framework shifts the burden of production back to the plaintiff. "[T]he Supreme Court tells us that 'a reason cannot be proved to be a "pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998) (*quoting St. Mary's v. Hicks,* 509 U.S. 502, at 515, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993)). Other than making a conclusory assertion that Defendant has known of his alcoholism since November of 1990, and that each interviewer knew of his alcoholism, Plaintiff has failed to demonstrate that Defendant's asserted reason for not selecting him is false—*i.e.,* he has failed to show that the individuals selected for these positions lacked the basic qualifications, or that his alcoholism influenced Defendant's decisionmaking against him. As discussed, Defendant denies that Plaintiff's alcoholism affected its decisions to hire individuals other than Plaintiff to the positions sought. Defendant submitted sworn affidavits by the individuals who interviewed Plaintiff, denying knowledge of his alcoholism and asserting that in each case, an individual more qualified than Plaintiff was selected.

The record supports such a conclusion. Regarding the Corrections Counselor position sought by Plaintiff in October 1992, Larry Roach, the individual selected to the position, had 6 years of experience as Corrections Counselor, compared to Plaintiff's one year of experience in this position. Exhibit R to Plaintiff's Certified Exhibits. Laura Wild, the individual selected to the Corrections Counselor position sought by Plaintiff in May 1993, had 3 and one half years experience as a Corrections Counselor, while Plaintiff had two years of such experience. *Id.* Kathleen Hermann, the individual selected to the Corrections Counselor position sought by Plaintiff in June 1993, had 5 years experience as a Corrections Counselor, compared to Plaintiff's two years of experience. *Id.;* Friot

Affidavit, ¶ 10. Finally, as to the vacant Corrections Counselor position filled in February 1994, John McGregor, the individual hired to the position, had 20 years of professional counseling experience, and had received recognition for outstanding achievement within his profession.[6] Becker Affidavit, ¶¶ 11, 13. Plaintiff, however, had 14 years of total counseling experience, and had received no such commendations. Exhibit R to Plaintiff's Certified Exhibits; Becker Affidavit, ¶¶ 12, 14.

In each instance, the record indicates that an individual with more experience in the area of Corrections Counseling, or with regard to McGregor, an extensive counseling background, was selected to the position sought by Plaintiff. Contrary to Plaintiff's arguments, Defendant did not have an affirmative duty to provide him with a job for which he was qualified; Defendant only had an obligation to treat him in the same manner as it treated other similarly qualified candidates. *School Board v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Wernick, supra,* at 384–85. Plaintiff's conclusory assertions of discrimination on the basis of his alcoholism fail to outweigh the factual evidence submitted by the parties in this case. *See Meiri, supra,* at 998. Viewing the facts in the light most favorable to Plaintiff, he has failed to submit evidence sufficient to demonstrate that Defendant's articulated reason for not selecting him to the positions sought, *i.e.,* the superior qualifications of the other candidates, was false. *Fisher, supra,* at 1339; *Glowacki, supra,* at 354. Accordingly, Plaintiff's claim asserting violation of § 296 of the New York Executive Law by Defendant New York Department of Corrections Services should be DISMISSED.

## CONCLUSION

Plaintiff's motion for summary judgment (Docket Item No. 19) should be DENIED.

Defendant's motion to dismiss and for summary judgment (Docket Item No. 26) should be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

---

**6.** Significantly, prior to his selection McGregor had informed Defendant that he is a disabled individual eligible for consideration un-

der § 55 of the Civil Service Law. Becker Affidavit, ¶ 15.